COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Moon, Judges Willis and Elder
Argued at Richmond, Virginia


LESLIE CHARLES QUINN
                                             OPINION BY
v.   Record No. 2393-96-2            JUDGE LARRY G. ELDER
                                        NOVEMBER 4, 1997
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF FLUVANNA COUNTY
                    John R. Cullen, Judge

         Shanon S. Echols for appellant.

         (Richard Cullen, Attorney General; Daniel J.
         Munroe, Assistant Attorney General, on
         brief), for appellee.



     Leslie Charles Quinn (appellant) appeals his convictions

of two counts of grand larceny.  He contends the trial court

erred when it denied his motion to suppress two incriminating

statements he made at different times to investigators from

separate jurisdictions.  For the reasons that follow, we reverse

and remand.

                              I.

                            FACTS

     In the early morning hours of March 18, 1996, a magistrate

issued a warrant to search appellant's home in order to seize

evidence related to numerous burglaries appellant was suspected

of having committed.  Investigator Jack Elliott and other

officers of the Goochland County Sheriff's Office executed the

warrant.  The officers seized numerous items they believed were

stolen property and arrested appellant.  Following his arrest,

appellant asked to meet with an attorney before communicating further with any of the officers.

On March 19, Keith Waldrop was appointed to represent appellant on one charge of breaking and entering a trailer in Goochland County.

The record indicates that appellant remained in custody continuously from the date of his arrest through his sentencing on September 27. Prior to April 9, Investigator Elliott approached appellant "once or twice" and asked if he was "ready to make a statement." Appellant responded by telling the investigator that he "wanted [his] attorney present before [he] made any kind of a statement." The record does not indicate that appellant ever met with Mr. Waldrop during this time.

In the morning of April 9, Investigator Elliott visited appellant in his jail cell and told appellant that he would "like to ask him a few questions." The investigator moved appellant from his cell to a vacant office for the meeting. Investigator Elliott began the meeting by advising appellant of his Miranda rights. The investigator then asked appellant if he "had a lawyer appointed to him yet." Appellant told the investigator that Mr. Waldrop had been appointed to represent him. Investigator Elliott explained to appellant that Mr. Waldrop had been appointed to represent him on a single charge of breaking and entering in Goochland County and not with regard to other charges or "possible charges" in Goochland or other counties.

The investigator told appellant that he did not intend to speak with appellant about the charge for which Mr. Waldrop had been appointed and that if appellant desired the assistance of counsel prior to being interrogated, he needed to "re-invoke" his Miranda right to counsel. Investigator Elliott later testified exactly what he told appellant:

> [I] explained to him that my understanding of the law is that whenever he invoked his Miranda warning the night he was arrested, that no one was allowed to question him at that point about that particular charge or any other charge that he might be involved in. Once he went to court, he was appointed a lawyer by the Court for that particular charge. He was not charged with another crime. Therefore, my understanding of the law was that his charge then became lawyer charge specific and if he wanted to invoke his Miranda warning on any other conversation we had, he had to re-invoke.

Following the investigator's explanation of appellant's right to legal assistance, appellant did not ask to consult with Mr. Waldrop or any other attorney.

Appellant agreed to make a statement. Investigator Elliott then questioned appellant about the items seized during the search of his home. During this exchange, appellant disclosed his involvement in burglaries and larcenies in both Goochland and Fluvanna counties. Investigator Elliott asked appellant if he would make a "formal statement" on tape. Appellant consented, and, during his taped statement, admitted to stealing the property at issue in this case which had been located in Fluvanna County.

The Goochland County Sheriff's Office informed the authorities in Fluvanna County of appellant's statement. On April 22, a Fluvanna County grand jury charged appellant with two counts of grand larceny. On April 23, the trial court ordered appellant moved from the James River Correctional Center to the trial court for a hearing scheduled at 2:00 p.m. on April 25. At 1:20 p.m. on April 25, Investigator Albert Bryant of the Fluvanna County Sheriff's Office approached appellant in a holding cell near the trial court. After appellant was warned of and waived his Miranda rights, he again confessed to taking the property at issue in this case.

Appellant filed a motion to suppress numerous items of evidence, including the statements he made to Investigator Elliott on April 9 and to Investigator Bryant on April 25. Appellant argued that these statements had been obtained in violation of his right to counsel under Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694 (1966). Following a hearing, the trial court denied appellant's motion. The trial court concluded that appellant never made a "specific request" for counsel before making his statement to Investigator Elliott. The trial court stated that "at best there was an equivocal statement or ambiguous statement or some discussion about Mr. Waldrop being appointed in another matter."

Appellant was subsequently tried and both of his statements were admitted into evidence. The trial court convicted appellant

-4-

of two counts of grand larceny.

II.

WAIVER OF RIGHT TO COUNSEL UNDER <u>MIRANDA</u>

Appellant contends that the trial court erred when it denied his motion to suppress the statements he made to Investigator Elliott in Goochland County on April 9 and to Investigator Bryant in Fluvanna County on April 25.  He argues that these statements should have been suppressed because the Commonwealth failed to prove that he waived his <u>Miranda</u> right to counsel.  Referencing the so-called "<u>Edwards</u> rule," appellant asserts that the Commonwealth did not prove that he waived his right to counsel prior to making his statements because both statements were obtained during interrogation that was initiated by the investigators after he had previously invoked his <u>Miranda</u> right to counsel.  We agree.

A.

<u>MIRANDA</u> AND THE "<u>EDWARDS</u> RULE"

In order to insure that the Fifth Amendment right against compulsory self-incrimination is protected during the custodial interrogation of criminal suspects, the United States Supreme Court established a series of "procedural safeguards" that law enforcement authorities must adhere to when interviewing suspects in their custody.  See <u>Davis v. United States</u>, 512 U.S. 452, 457, 114 S. Ct. 2350, 2354, 129 L.Ed.2d 362 (1994) (citing <u>Michigan v. Tucker</u>, 417 U.S. 433, 443-44, 94 S. Ct. 2357, 2363-64, 41 L.Ed.2d 182 (1974)); <u>see also</u> <u>Mier v. Commonwealth</u>, 12 Va. App. 827, 831,

-6-

407 S.E.2d 342, 344-45 (1991). Compliance with these procedures is a "prerequisite[] to the admissibility of any statement made by a defendant" during custodial interrogation. Miranda, 384 U.S. at 476, 86 S. Ct. at 1629; see also Goodwin v. Commonwealth, 3 Va. App. 249, 252, 349 S.E.2d 161, 163 (1986).

Included among the safeguards established in Miranda is the right of a suspect to have counsel present at any custodial interrogation and to terminate the interrogation by invoking this right. See Edwards v. Arizona, 451 U.S. 477, 485-86, 101 S. Ct. 1880, 1885, 68 L.Ed.2d 378 (1981); Miranda, 384 U.S. at 469, 475, 86 S. Ct. at 1625, 1628; see also Correll v. Commonwealth, 232 Va. 454, 462, 352 S.E.2d 352, 356 (1987); Foster v. Commonwealth, 8 Va. App. 167, 173, 380 S.E.2d 12, 15 (1990). In order for a defendant's statement to be admissible at trial, the Commonwealth must prove that the defendant was informed of his Miranda right to counsel, i.e., that he has the right to consult with a lawyer, to have the lawyer present during interrogation and that, if the defendant is indigent, a lawyer will be appointed to represent him. See Miranda, 384 U.S. at 471, 473, 475, 86 S. Ct. at 1626, 1627, 1628; Green v. Commonwealth 223 Va. 706, 710, 292 S.E.2d 605, 607 (1982). If the interrogation continues without the presence of an attorney, the defendant's statement is inadmissible unless the Commonwealth proves by a preponderance of the evidence that the defendant voluntarily, knowingly, and intelligently waived his right to retained or appointed counsel.

See Edwards, 451 U.S. at 482, 101 S. Ct. at 1884; Miranda, 384 U.S. at 475, 86 S. Ct. at 1628. See also Colorado v. Connelly, 479 U.S. 157, 168, 107 S. Ct. 515, 522, 93 L.Ed.2d 473 (1986); Mills v. Commonwealth, 14 Va. App. 459, 468, 418 S.E.2d 718, 722-23 (1992).

In order to "prevent police from badgering a defendant into waiving his previously asserted Miranda rights" and to "protect the suspect's 'desire to deal with the police only through counsel,'" the United States Supreme Court established the "Edwards rule" as a "second layer of prophylaxis for the Miranda right to counsel." See Davis, 512 U.S. at 458, 114 S. Ct. at 2355; McNeil v. Wisconsin, 501 U.S. 171, 176, 178, 111 S. Ct. 2204, 2208, 2209, 115 L.Ed.2d 158 (1991); Michigan v. Harvey, 494 U.S. 344, 350, 110 S. Ct. 1176, 1180, 108 L.Ed.2d 293 (1990). Pursuant to Edwards and its progeny, once the defendant invokes his Miranda right to counsel, all police-initiated interrogation regarding any criminal investigation must cease unless the defendant's counsel is present at the time of questioning. See Minnick v. Mississippi, 498 U.S. 146, 153, 111 S. Ct. 486, 491, 112 L.Ed.2d 489 (1990); Arizona v. Roberson, 486 U.S. 675, 683, 108 S. Ct. 2093, 2099, 100 L.Ed.2d 704 (1988); Edwards, 451 U.S. at 484-85, 101 S. Ct. at 1885; see also Jackson v. Commonwealth, 14 Va. App. 414, 416, 417 S.E.2d 5, 6-7 (1992). If the police initiate interrogation of a defendant after he has invoked his Miranda right to counsel and before his counsel is present, "a

valid waiver of this right cannot be established . . . even if he has been advised of his rights."  Edwards, 451 U.S. at 484, 101 S. Ct. at 1884-85; see Eaton v. Commonwealth, 240 Va. 236, 252, 397 S.E.2d 385, 395 (1990); Hines v. Commonwealth, 19 Va. App. 218, 221, 450 S.E.2d 403, 404 (1994).  However, the Edwards rule only applies to periods of continuous custody, and, if the defendant is released from custody following the invocation of his Miranda right to counsel, the Edwards rule does not bar subsequent police-initiated interrogation.  See Tipton v. Commonwealth, 18 Va. App. 832, 834, 447 S.E.2d 539, 540 (1994).[1]

Whether the Edwards rule renders a statement inadmissible is determined by a three-part inquiry.  Cf. Smith v. Illinois, 469 U.S. 91, 95, 105 S. Ct. 490, 492-93, 83 L.Ed.2d 488 (1984). First, the trial court "must determine whether the accused

---

[1]See also United States v. Barlow, 41 F.3d 935, 945-46 (5th Cir. 1994); United States v. Hines, 963 F.2d 255, 257 (9th Cir. 1992); Dunkins v. Thigpen, 854 F.2d 394, 397 (11th Cir. 1988); United States ex rel. Espinoza v. Fairman, 813 F.2d 117, 125 (7th Cir. 1987); McFadden v. Garraghty, 820 F.2d 654, 661 (4th Cir. 1987); United States v. Geittmann, 733 F.2d 1419, 1429 (10th Cir. 1984); United States v. Skinner, 667 F.2d 1306, 1309 (9th Cir. 1982).
Although the United States Supreme Court has yet to definitively address the issue of whether a break in custody terminates the "Edwards effect" of a defendant's request for counsel on subsequent police-initiated interrogation, dicta in two of its cases suggest that continuous custody is a requirement for application of the Edwards rule.  See McNeil, 501 U.S. at 177, 111 S. Ct. at 2208 (stating that a suspect's statements during post-invocation, police-initiated interrogation are presumed involuntary "assuming there has been no break in custody"); Roberson, 486 U.S. at 683, 108 S. Ct. 2093 (stating that a suspect's initial request for counsel does not disappear when the police approach him "still in custody" about a separate criminal investigation).

actually invoked his right to counsel" and whether the defendant remained in continuous custody from the time he or she invoked this right to the time of the statement. Id.; see Tipton, 18 Va. App. at 834, 447 S.E.2d at 540. Second, if the accused has invoked his or her right to counsel and has remained in continuous custody, the statement is inadmissible unless the trial court finds that the statement was made at a meeting with the police that was initiated by the defendant or attended by his lawyer. See Smith, 469 U.S. at 96, 105 S. Ct. at 493 (stating that statement is admissible if made at a defendant-initiated meeting); Minnick, 498 U.S. at 153, 111 S. Ct. at 491 (stating that police "may not reinitiate interrogation without counsel present"). Third, if the first two parts of the inquiry are met, the trial court may admit the statement if it determines that the defendant thereafter "knowingly and intelligently waived the right he had invoked." Smith, 469 U.S. at 96, 105 S. Ct. at 493.

On appeal from a trial court's denial of a motion to suppress, the burden is on the appellant to show that the trial court's decision constituted reversible error. See Stanley v. Commonwealth, 16 Va. App. 873, 874, 433 S.E.2d 512, 513 (1993). We view the evidence in the light most favorable to the prevailing party, granting to it all reasonable inferences fairly deducible therefrom. See Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991). We review the trial court's findings of historical fact only for "clear error," but

we review <u>de</u> <u>novo</u> the trial court's application of defined legal standards to the particular facts of a case, such as determinations of reasonable suspicion and probable cause.  <u>See</u> <u>Shears v. Commonwealth</u>, 23 Va. App. 394, 398, 477 S.E.2d 309, 311 (1996); <u>see also</u> <u>Ornelas v. United States</u>, ___ U.S. ___, ___, 116 S. Ct. 1657, 1662, 134 L.Ed.2d 911 (1996).  Whether a defendant "invoked" his <u>Miranda</u> right to counsel during custodial interrogation and whether he "waived" this right are determined by applying judicially declared standards.  <u>See</u> <u>Davis</u>, 512 U.S. at 458-59, 114 S. Ct. at 2355 (standard for invocation); <u>Moran v. Burbine</u>, 475 U.S. 412, 421, 106 S. Ct. 1135, 1140-41, 89 L.Ed.2d 410 (1986) (standard for waiver).

B.

THE APRIL 9 STATEMENT

We hold that the trial court erred when it declined to suppress the statement made by appellant to Investigator Elliott on April 9.  The <u>Edwards</u> rule clearly applied to appellant's incriminating statement made on April 9.  Appellant previously had invoked his right to counsel, remained in continuous custody from the time of his request until the time of his statement, and his statement was made at a meeting initiated by Investigator Elliott at which appellant's counsel was not present.  <u>See</u> <u>Hines</u>, 19 Va. App. at 221-22, 450 S.E.2d at 404-05.

The record established that appellant invoked his right to counsel prior to April 9.  <u>See</u> <u>Davis</u>, 512 U.S. at 459, 114 S. Ct.

-11-

at 2355 (stating that the invocation must be sufficiently clear so that "a reasonable police officer in the circumstances would understand the statement to be a request for an attorney"). Appellant testified that he "asked for an attorney" when he was arrested on March 18, and Investigator Elliott testified that appellant "invok[ed] his Miranda warnings the night he was arrested." Although the trial court concluded that appellant never made a "specific request" for counsel, the trial court's reasoning indicated that it did not consider in its analysis appellant's request for counsel on the night of his arrest.

The record also established that appellant remained in continuous custody from the time of his arrest until the time he made his statement. Appellant was arrested on March 18 and was visited in his jail cell on April 9 by Investigator Elliott. In addition, a series of custodial transportation orders and court orders in the record indicate that appellant was incarcerated at the James River Correctional Facility from April 23 through September 27, the day his sentence was imposed. No other evidence in the record sheds light on appellant's custodial status during this time. Based on this evidence, we may infer that no break occurred in appellant's custodial status following his arrest.

In addition, the meeting with appellant on April 9 was initiated by Investigator Elliott while appellant was still in custody. In the morning of April 9, Investigator Elliott

approached appellant in his jail cell and told appellant that he wanted to ask him a few questions. He then moved appellant to the vacant office where appellant eventually made his statement. Nothing in the record indicates that appellant desired to speak with Investigator Elliott prior to the investigator's visit. Appellant's counsel was not present at any time during the meeting. Although appellant was given and waived his <u>Miranda</u> rights prior to making his statement, the fact that he had earlier invoked his right to counsel precluded the Commonwealth from proving a valid waiver of his rights at a meeting initiated by the authorities at which his counsel was not present. <u>See</u> <u>Minnick</u>, 498 U.S. at 153, 111 S. Ct. at 491, <u>Edwards</u>, 451 U.S. at 484-85, 101 S. Ct. at 1084-85. In addition, the fact that the investigator asked appellant about crimes that had not been previously discussed is of no moment because appellant's initial request for counsel is deemed non-offense-specific. <u>See</u> <u>Roberson</u>, 486 U.S. at 683, 108 S. Ct. at 2099.

Because the <u>Edwards</u> rule applied to the statement made by appellant on April 9, the Commonwealth did not establish that appellant waived his <u>Miranda</u> right to counsel prior to making the statement. <u>See</u> <u>Miranda</u>, 384 U.S. at 476, 86 S. Ct. at 1629. For these reasons, the trial court erred in refusing to suppress the statement.

C.

THE APRIL 25 STATEMENT

The admissibility of the April 25 statement raises an issue of first impression in Virginia.  We must determine whether the Edwards rule bars admission of a statement made during an interrogation initiated by an officer from a jurisdiction different than the one in which the defendant initially requested counsel.  The uncertainty stems from the as yet unaddressed effect of Roberson on Simmons v. Commonwealth, 225 Va. 111, 300 S.E.2d 918 (1983).

In Simmons, the defendant, an Army sergeant, was detained by military authorities when, after an unauthorized absence from his post, he informed them of a possible warrant for his arrest in Fairfax County.  Simmons, 225 Va. at 114, 115-16, 300 S.E.2d at 919, 920.  Later in the day, a staff sergeant who was attempting to verify that Simmons was both "AWOL" and wanted by authorities in Fairfax, warned Simmons of his Miranda rights and asked Simmons if he wanted an attorney.  See id. at 116, 300 S.E.2d at 920.  Simmons replied that he wanted an attorney.  See id. Simmons remained in custody until a Fairfax investigator arrived to question him about a murder in Fairfax County.  See id. at 116-17, 300 S.E.2d at 920.  The Fairfax investigator, who did not know of Simmons' earlier request for counsel, informed Simmons of his Miranda rights.  Simmons then signed a written waiver form, see id. at 117, 300 S.E.2d at 920-21, and confessed to the Fairfax murder.  See id. at 117, 300 S.E.2d at 921.  Following another period of unbroken custody and another informed waiver of

-14-

his Miranda rights, Simmons confessed again to the murder. See id. at 117-18, 300 S.E.2d at 921.

The trial court denied Simmons' motion to suppress his confessions. On appeal, the Virginia Supreme Court affirmed, holding that the Edwards rule did not apply to Simmons' confessions. See id. at 121, 300 S.E.2d at 923. The Court noted that Simmons' initial request for counsel was made to a military sergeant during the sergeant's investigation of Simmons' "status with reference to the military law." See id. The Court reasoned that because Simmons' confessions occurred during interrogation by a different law enforcement officer who did not actually know of Simmons' initial request for counsel and who questioned Simmons about a different crime, Edwards did not bar the admission of his confessions. See id.

In Roberson, the United States Supreme Court addressed the issue raised in Simmons and reached a different conclusion. Roberson was arrested on April 16 for burglary and, after being informed of his Miranda rights, requested the assistance of counsel. See Roberson, 486 U.S. at 678, 108 S. Ct. at 2096. Roberson remained in custody until April 19, when he was approached by "a different officer . . . about a different burglary." See id. The officer, who was ignorant of Roberson's earlier request for counsel, gave Roberson his Miranda warnings. See id. Roberson subsequently confessed to the burglary. See id.

The trial court <u>granted</u> Roberson's motion to suppress and the United State Supreme Court affirmed. <u>See</u> <u>id.</u> at 678-79, 108 S. Ct. at 2096-97. In its opinion, the Court rejected both theories relied upon by the Virginia Supreme Court in <u>Simmons</u> to limit the reach of the <u>Edwards</u> rule. First, the Court held that the <u>Edwards</u> rule is <u>not</u> offense specific and that a defendant's request for counsel during an interrogation about one crime bars subsequent police-initiated interrogation about other suspected criminal activity. <u>See</u> <u>id.</u> at 682-84, 108 S. Ct. at 2098-99.

Second, the Court held that an officer who initiates the reinterrogation of a defendant without knowing of the defendant's prior request for counsel is not relieved of complying with the <u>Edwards</u> rule. <u>See</u> <u>id.</u> at 687, 108 S. Ct. at 2101. The Court indicated that law enforcement authorities have a duty to inform each other of prior invocations of the <u>Miranda</u> right to counsel by suspects in their custody and that the <u>Edwards</u> rule requires officers to ascertain prior to interrogation whether a suspect has previously requested counsel. The Court stated:

> [C]ustodial interrogation must be conducted pursuant to established procedures, and those procedures in turn must enable an officer who proposes to initiate an interrogation to determine whether the suspect has previously requested counsel . . . . Whether a contemplated reinterrogation concerns the same or a different offence, or whether the same or different law enforcement <u>authorities</u> are involved in the second investigation, the same need to determine whether the suspect has requested counsel exists. The police department's failure to honor that request cannot be justified by the lack of diligence of a particular officer.

<u>Id.</u> at 487-88, 108 S. Ct. at 2101 (emphasis added). Based on the use of the word "authorities" in this passage rather than "officers" and the fact that the Court stated it was addressing a conflict in state and federal cases that dealt with successive interrogations by officers from separate jurisdictions, <u>see</u> <u>id.</u> at 680 n.3, 108 S. Ct. at 2097 n.3, we conclude that the Court clearly did not intend this aspect of the <u>Roberson</u> holding to be limited by jurisdictional lines.

Based on our reading of these two cases, we hold that <u>Roberson</u> renders <u>Simmons</u> no longer controlling. In <u>Roberson</u>, the United States Supreme Court expressly rejected the reasoning relied upon by the Virginia Supreme Court in <u>Simmons</u>. Contrary to the holding of <u>Simmons</u> and pursuant to <u>Edwards</u> and its progeny, under <u>Roberson</u> if a defendant requests counsel during custodial interrogation and remains in continuous custody, any subsequent waiver of his <u>Miranda</u> right to counsel obtained during reinterrogation initiated by the authorities and held outside the presence of his counsel is presumed to be involuntary. <u>See</u> <u>McNeil</u>, 501 U.S. at 177-78, 111 S. Ct. at 2208. The fact that the subsequent interrogation (1) was initiated by authorities from another jurisdiction who did not actually know of the defendant's prior request for counsel or (2) concerned a separate criminal investigation does not preclude the application of the <u>Edwards</u> rule. <u>See</u> <u>Roberson</u>, 486 U.S. at 687-88, 108 S. Ct. at

-17-

2101.[2]

We hold that the trial court erred when it denied appellant's motion to suppress the statement made to Investigator Bryant on April 25. Like the circumstances surrounding the April 9 statement, the record indicates that appellant invoked his _Miranda_ right to counsel on March 18 and remained in continuous custody until he was approached by Investigator Bryant in a holding cell on April 25. Investigator Bryant advised appellant of his _Miranda_ rights, and appellant waived his rights and made the incriminating statement. Appellant's counsel was not present during the interrogation. Because there was no break in appellant's custodial status prior to this interrogation and because it was initiated by Investigator Bryant and held outside the presence of appellant's counsel, the _Edwards_ rule mandates suppression of the statement. Even though Investigator Bryant

---

[2]We need not address the effect of _Roberson_ on _McFadden v. Commonwealth_, 225 Va. 103, 300 S.E.2d 924 (1983), a sister case of _Simmons_, because _McFadden_ is factually distinguishable. In _McFadden_, the Virginia Supreme Court held that _Edwards_ did not preclude the admissibility of McFadden's confessions even though they were made at post-invocation interrogations initiated by investigators from different jurisdictions investigating different crimes. _See_ _McFadden_, 225 Va. at 110, 300 S.E.2d at 927-28. Although not mentioned by the Virginia Supreme Court in its reasoning, the facts of _McFadden_ indicate that McFadden was _twice_ released from custody after he requested counsel and before the interrogation that led to his confessions. _See_ _id._ at 106, 300 S.E.2d at 925. As the Fourth Circuit reasoned when it affirmed the denial of McFadden's petition for a writ of habeas corpus, these breaks in McFadden's custody mooted the "_Edwards_ effect" of his initial request for counsel on later police-initiated interrogation. _See_ _McFadden v. Garraghty_, _supra_ note 1, 820 F.2d at 661 (citing _Skinner_, _supra_ note 1).

was from a jurisdiction different from the officers who knew of appellant's request for counsel, he knew of appellant's prior contacts with the Goochland authorities.  Pursuant to <u>Roberson</u>, the investigator was required to exercise diligence prior to interrogating appellant to determine whether appellant had previously requested counsel.  <u>See</u> <u>Roberson</u>, 486 U.S. at 687–88, 108 S. Ct. at 2101.  This failure to honor appellant's request to deal with the police only through counsel cannot be justified by the lack of adequate procedures in place to inform officers subsequently coming into contact with appellant of appellant's prior request for counsel.  <u>See</u> <u>id.</u> at 688, 108 S. Ct. at 2101.

III.

HARMLESS ERROR

Next we must determine whether the admission of appellant's statements in violation of the Edwards rule constituted reversible error.  See United States v. Cannon, 981 F.2d 785, 789-90 n.3 (5th Cir. 1993) (holding that Edwards violation can be harmless); cf. Arizona v. Fulminante, 499 U.S. 279, 306-10, 111 S. Ct. 1246, 1263-65, 113 L.Ed.2d 302 (1991) (holding that constitutional "trial errors," such as the admission of an involuntary confession, can be harmless).

A federal constitutional error is harmless, and thus excusable, only if it appears "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained."  Chapman v. California, 386 U.S. 18, 24, 87 S. Ct. 824, 827-28, 17 L.Ed.2d 705 (1967); see also Fulminante, 499 U.S. at 296, 111 S. Ct. at 1257 (applying Chapman test to erroneously admitted confession); Lavinder v. Commonwealth, 12 Va. App. 1003, 1005, 407 S.E.2d 910, 911 (1991).  The admission of evidence obtained in violation of the federal constitution is reversible error if "there is a reasonable possibility that the evidence complained of might have contributed to the conviction."  Fahy v. Connecticut, 375 U.S. 85, 86-87, 84 S. Ct. 229, 230, 11 L.Ed.2d 171 (1963); see Chapman, 386 U.S. at 24, 87 S. Ct. at 828 (stating that the Chapman test "do[es] no more than adhere to the meaning of [Fahy]").

We review the record in this case with an awareness of the impact that a confession can have in a criminal trial.

> A confession is like no other evidence. Indeed, "the defendant's own confession is probably the most probative and damaging evidence that can be admitted against him. . . . [T]he admissions of a defendant come from the actor himself, the most knowledgeable and unimpeachable source of information about his past conduct. Certainly, confessions have profound impact on the jury, so much so that we may justifiably doubt its ability to put them out of mind even if told to do so." While some statements by a defendant may concern isolated aspects of the crime or may be incriminating only when linked to other evidence, a full confession in which the defendant discloses the motive for and means of the crime may tempt the [trier of fact] to rely upon that evidence alone in reaching its decision.

Fulminante, 499 U.S. at 296, 111 S. Ct. at 1257-58 (citations omitted).

> The court conducting a harmless-error inquiry must appreciate the indelible impact a full confession may have on the trier of fact, as distinguished, for instance, from the impact of an isolated statement that incriminates the defendant only when connected with other evidence.

Id. at 313, 111 S. Ct. at 1266 (Kennedy, J., concurring).

Based on our review of the record, we hold that the erroneous admission of appellant's statements was not harmless. Appellant's statements contained a comprehensive admission of guilt that described in detail both his motive for taking the stolen property and the means by which he committed the crimes.

They also provided the only direct evidence in the record of appellant's knowledge that the tools and equipment loaded onto the truck by his son belonged to "another" and of his intent to "permanently deprive" Messrs. Worley and Truslow of possession of these items.  See Bright v. Commonwealth, 4 Va. App. 248, 251, 356 S.E.2d 443, 444 (1987) (defining larceny as "the wrongful taking of the goods of another without the owner's consent and with the intention to permanently deprive the owner of possession of the goods").  After balancing appellant's confessions, which were both comprehensive and extremely probative, against the comparatively weaker lawfully admitted evidence of his guilt, we find a reasonable possibility that appellant's confessions contributed to the trial court's verdict.

For the foregoing reasons, we reverse the convictions of two counts of grand larceny and remand for further proceedings consistent with this opinion.

Reversed and remanded.