COURT OF APPEALS OF VIRGINIA


Present: Judges Coleman, Annunziata and Bumgardner
Argued by teleconference


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
v.   Record No. 2556-98-1          JUDGE SAM W. COLEMAN III
                                        APRIL 13, 1999
RICHARD THOMAS ANDERSON


FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
Jack B. Stevens, Judge Designate

Kathleen B. Martin, Assistant Attorney
General (Mark L. Earley, Attorney General,
on brief), for appellant.

David H. Moyer (Bashara & Hubbard, on
brief), for appellee.


Richard Thomas Anderson is charged with two counts of

robbery, two counts of abduction, four counts of use of a firearm

in the commission of a felony, and unlawfully wearing a mask.  The

trial court granted Anderson's motion to suppress statements he

made to police on April 10, 1998 and May 1, 1998.  We granted the

Commonwealth an interlocutory review of the trial judge's ruling.

Because the trial judge based his ruling on a single and erroneous

principle of law in suppressing the statements, we reverse.

---

    *Pursuant to Code § 17.1-413, recodifying Code § 17-116.010,
this opinion is not designated for publication.

BACKGROUND

When the Commonwealth appeals a trial court's order suppressing evidence, we view the relevant evidence in the light most favorable to the defendant granting to the defendant all reasonable inferences fairly deducible therefrom. Commonwealth v. Grimstead, 12 Va. App. 1066, 1067, 407 S.E.2d 47, 48 (1991).

Officers arrested Anderson on April 10, 1998, in connection with a robbery. Detective Loftin brought Anderson to an interview room where he presented Anderson with a "Legal Rights Advice Form" explaining his Miranda rights. Anderson answered "no" to item number six that read "I further state that I waive these rights and desire to make a statement." Anderson informed Detective Loftin that he did not want to speak to him. According to Anderson, he further informed Loftin that he had retained a lawyer and that he wanted to speak with his lawyer. Loftin left Anderson in the interview room.

Anderson's attorney arrived at the police station shortly after the officers took Anderson into custody. The attorney requested to see Anderson, but the officers denied him access.

Forty minutes after Loftin left the interview room, two homicide detectives entered the room and questioned Anderson regarding two unsolved homicide cases. After the homicide detectives left, Loftin returned to the room -- however, the testimony conflicts regarding his return.

-

Anderson's testimony was that Loftin reinitiated the interrogation. Anderson testified that Loftin returned and cautioned Anderson that he was in "real trouble now," that he was suspected of homicide, and that "the bank robbery wasn't going to be anything." Loftin left the interview room for another hour, after which he returned and explained to Anderson that if he "told [Loftin] anything about the robbery, then [Loftin] could talk to the detective on homicide and [Anderson] wouldn't have to worry about that." Shortly thereafter, Anderson waived his Miranda rights and made a statement to Loftin.

In contrast, Loftin testified that Anderson requested a cigarette, which Loftin delivered. During that contact, Anderson began discussing his problems. Eventually, Anderson started to talk about issues related to the robbery charge. Loftin stopped him and again advised him of his rights, whereupon Anderson waived his rights and made a statement.

On May 1, 1998, Investigator Peterson requested to speak with Anderson concerning a different robbery. Anderson, who was still in custody, informed the investigators that he had a lawyer, that he wanted to speak with the lawyer, and that he did not want to make a statement. The investigators told Anderson that his lawyer represented him on a different case and therefore "it didn't matter." Thereafter, Anderson waived his Miranda rights and made a statement to police.

-

Although substantial evidence in the record indicated that Anderson requested to see an attorney, the trial judge did not resolve that factual dispute or suppress the evidence on that basis.  Instead, the trial court found that the police officers had adequate notification that Anderson was represented by counsel and that Anderson's counsel had clearly expressed a desire to meet with Anderson.  The trial court expressly held that failure of the police officers to permit the attorney to see his client, upon request from the attorney, rendered both statements in violation of Anderson's Fifth Amendment privilege against self-incrimination.  Accordingly, on that basis the trial judge suppressed the statements.

## ANALYSIS

We review de novo the trial court's application of defined legal standards to the historical facts.  See Quinn v. Commonwealth, 25 Va. App. 702, 712-13, 492 S.E.2d 470, 475-76 (1997).

The trial court relied on an erroneous legal principle in concluding that the investigators violated Anderson's Fifth Amendment rights.  The trial court stated that

> [w]hen the lawyer shows up and says my
> client is back there and I want to see him,
> I think that's adequate notification that
> the defendant is represented by counsel and
> he must be allowed access to the defendant,
> his client, if [police] are going to
> question him.

-

In Moran v. Burbine, 475 U.S. 412 (1986), police officers deliberately misinformed an attorney who had been contacted for the defendant by telling him that the defendant would not be questioned until the following day and by failing to inform the attorney of more serious charges brought against his client. Additionally, the officers declined to inform the defendant that an attorney had been contacted to represent him. However, as to a suspect's Fifth Amendment right to counsel, the Supreme Court refused "to adopt a rule requiring the police to inform a suspect of an attorney's efforts to reach him." Id. at 425. "Events occurring outside the presence of the suspect and entirely unknown to him surely can have no bearing on the capacity to comprehend and knowingly relinquish a constitutional right." Id. at 422; see also Jackson v. Commonwealth, 255 Va. 625, 638, 499 S.E.2d 538, 546 (1998) (holding it was not error for police to lie to a sixteen-year-old juvenile defendant about whether his mother was in the building nor for police to deny the mother's attempt to see the defendant). Thus, because the right to remain silent and to have counsel present belong to the defendant, neither an attorney's presence nor the attorney's request to see his or her client are relevant as to whether the defendant invoked his Fifth Amendment privilege against self-incrimination. See Moran, 475 U.S. at 421-28. Accordingly, by suppressing the evidence because the police

-

officers failed to honor counsel's request to see his client, the trial court applied an erroneous legal standard.

We decline to address whether investigators obtained the defendant's statements in violation of his Fifth Amendment right to counsel.  That issue, although presented to the trial court in the motion to suppress and on the evidence, has yet to be decided by the trial court and is not before us on appeal.

Accordingly, because the trial court has yet to consider properly whether investigators violated Anderson's Fifth Amendment right to counsel, and because the only basis upon which the trial court suppressed the statements was invalid, we reverse and remand for such further action as is required.

<u>Reversed and remanded</u>.