COURT OF APPEALS OF VIRGINIA


Present: Judges Annunziata, Frank and Senior Judge Bray
Argued at Chesapeake, Virginia


ANTHONY S. FORD

                                    MEMORANDUM OPINION* BY
v.    Record No. 0997-02-1            JUDGE ROBERT P. FRANK
                                        FEBRUARY 19, 2003
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                        Jerome James, Judge

            Henry L. Sadler, III (Sadler & Nicholas, on
            brief), for appellant.

            Robert H. Anderson, III, Senior Assistant
            Attorney General (Jerry W. Kilgore, Attorney
            General, on brief), for appellee.


     Anthony S. Ford (appellant) was convicted of robbery and use

of a firearm in the commission of a robbery after he conditionally

pled guilty to the indictments. On appeal, appellant claims the

trial court erred in denying his motion to suppress his statement

to the police. Finding no error, we affirm the trial court's

judgment.

                          BACKGROUND[1]

     During their investigation of a robbery in Norfolk,

Investigators Victor Powell and W.L. Garrison of the Norfolk

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

     [1] Because the circumstances of the robbery are not relevant
to this opinion, we do not summarize those facts here.

Police Department obtained information that led them to speak with appellant on April 27, 2001.  At the time, appellant was in the Hampton jail, held on felony charges pending in that city.

At the beginning of the interview, Powell and Garrison informed appellant in general terms that they were investigating a robbery in Norfolk.  The officers reviewed a legal rights advice form with appellant.  In response to each of the first four questions, which listed the Miranda rights,[2] appellant answered "yes," indicating he understood the right, and he initialed the question.  He initialed the fifth question, acknowledging that the rights were "fully explained" to him and that he understood those rights.  In response to the sixth question, "I further state that I waive these rights and desire to make a statement," appellant answered "No."  Appellant indicated "he didn't have anything to say" to the officers.  At that point, the investigators ended the interview and left the interview room.

Investigator Powell testified appellant did not ask for counsel during this interview.  According to Powell, "He just said that he didn't have anything to say to us."  Describing his "normal policy," Powell explained, once a suspect indicates he understands his rights, but does "not wish to make a statement, [does] not want to talk, then that's the end of the interview."

---

[2] These rights are listed in Miranda v. Arizona, 384 U.S. 436 (1966).

-

On May 1, 2001, arrest warrants for appellant were issued in the Norfolk case.

Appellant remained in custody in Hampton, where an attorney was appointed to represent him. During this time, Corporal Curtis E. Cooper of the Hampton Police Department began talking to appellant regarding several crimes in Hampton. Appellant initiated all of the meetings with Cooper. Usually, appellant's girlfriend contacted the corporal and asked for a meeting, indicating appellant wanted to talk with the police. Once or twice, appellant may have contacted Cooper directly and said he wished to speak with him. On one occasion, both appellant's girlfriend and his Hampton attorney attended the meeting. Only once did appellant fail to confirm his girlfriend's representation that he wished to speak with the Hampton police, and consequently Cooper did not speak with appellant at that time. Otherwise, appellant "was always ready to go over and talk."

During a conversation in May, appellant implicated his uncle, Carollea Ford, in several Hampton robberies. Appellant also indicated his uncle was involved in several Norfolk robberies, including one involving a taxi driver.[3] Cooper contacted the Norfolk robbery squad and relayed this information to a sergeant.

On June 7, 2001, Cooper and appellant met again at appellant's request. Appellant offered more information on

_____

[3] The instant offense involved robbery of a taxi driver.

-

Carollea Ford's involvement in the Norfolk robberies. Cooper testified appellant did not request to have counsel present.

That same day, Powell and Garrison went to the Hampton Police Department expecting to speak with Carollea Ford. According to Powell, a Hampton officer had contacted him, indicating Carollea Ford had agreed to speak with the Norfolk investigators about several robberies.[4] Carollea Ford was under arrest in Hampton, but he had been transferred from the Hampton jail to a regional facility. Powell was "totally surprised" when he learned that appellant was in the police interview room.

After realizing the confusion, Powell told Cooper that appellant had indicated during an earlier meeting that he did not want to speak with the Norfolk police. Cooper returned to the interview room and spoke with appellant. Cooper "came back out and told [Powell] that [appellant] was willing to talk . . . in connection with his uncle's involvement in the Norfolk robberies."

Powell then entered the interview room and confirmed that appellant would speak with him. Powell re-advised appellant of the Miranda rights. Appellant signed and initialed the same Miranda rights form, although this time he indicated he wanted to waive those rights and make a statement. At no time did appellant

---

[4] At trial, the officers from the various jurisdictions speculated that the message left by Cooper might have been misconstrued, giving Powell the impression that the uncle, rather then appellant, had information pertinent to the investigations.

-

ask for counsel or indicate he did not want to speak to the police.[5]  Appellant then gave a taped statement about the Norfolk robbery.

At the suppression hearing, appellant testified he asked for counsel at both the April 27th and the June 7th interviews.  He also testified he did not initiate or agree to the June 7th meeting with the Norfolk police.

The trial court denied the motion to suppress, making a number of factual findings.  The court found "credible evidence" proved that "some confusion" caused Powell and Garrison to return to Hampton on June 7, 2001, in the mistaken belief that they could speak with Carollea Ford.  After being informed appellant was the person who wanted to speak with them, the Norfolk investigators obtained appellant's acknowledgement that he indeed wished to speak with them.  The trial court further found appellant initiated the June 7, 2001 interview with the Norfolk police.  The court concluded:

> So, it's my determination that this defendant did, in fact, initiate those inquiries, and these detectives did, in fact, readvise him of his rights as was stated [in the legal rights advice form dated June 7, 2001], and this defendant did, in fact, freely and voluntarily and intelligently give a taped statement to the Norfolk Police Department.

---

[5] The Norfolk investigators did not attempt to speak with appellant's Hampton attorney, because their case was not "related to anything that occurred in Hampton."  They were unsure whether appellant had Norfolk counsel at that time.

-

The trial court did not clearly address whether appellant initially asked for counsel.[6]  However, after conducting an Edwards v. Arizona, 451 U.S. 477 (1981), analysis, the trial court concluded appellant did initiate the June 7 meeting with the police.

## ANALYSIS

Appellant argues he invoked his right to counsel at the April 27 interview with the Norfolk detectives, thus preventing police from re-initiating any discussion with him under the principles established in Edwards.  He contends, since he did not initiate the second meeting with the Norfolk investigators, the trial court should have suppressed the confession.  The Commonwealth argues appellant did not invoke his right to counsel.  Therefore, the Commonwealth need not prove appellant initiated the June 7th interview.  Alternatively, the Commonwealth argues appellant did, in fact, initiate that conversation.  For the purposes of our analysis, we assume without deciding that appellant invoked his right to counsel at the April 27th interrogation.

> In reviewing a trial court's denial of a
> motion to suppress, we view the evidence in
> the light most favorable to the Commonwealth
> as the party that prevailed below, and grant

---

[6] At oral argument, appellant's counsel relied upon a transcript of the suppression hearing that differed in some respects from the transcript filed with this Court.  As we can consider only the official record sent to this Court, see Rules 5A:10, 5A:25(h), we do not address these differences.

-

> to its evidence "all reasonable inferences deducible therefrom." Giles v. Commonwealth, 28 Va. App. 527, 532, 507 S.E.2d 102, 105 (1998) (citation omitted). In addition, we review the trial court's findings of historical fact only for "clear error," but we review de novo the trial court's application of defined legal standards to the particular facts of a case. See Ford v. Commonwealth, 28 Va. App. 249, 255, 503 S.E.2d 803, 805 (1998); see also Ornelas v. United States, 517 U.S. 690, 700 (1996).

Watts v. Commonwealth, 38 Va. App. 206, 213, 562 S.E.2d 699, 702-03 (2002).

When a defendant previously has invoked his right to have an attorney present during questioning, the courts use a three-part test to determine whether the Commonwealth has proven a subsequent confession is admissible. See Quinn v. Commonwealth, 25 Va. App. 702, 712, 492 S.E.2d 470, 475 (1997); Giles v. Commonwealth, 28 Va. App. 527, 532, 507 S.E.2d 102, 105 (1998); Potts v. Commonwealth, 35 Va. App. 485, 493, 546 S.E.2d 229, 233, aff'd, 37 Va. App. 64, 553 S.E.2d 560 (2001) (en banc). First, the defendant must clearly invoke his right to counsel. Second, the defendant must initiate the further discussion with the police. Third, the defendant's subsequent waiver of the invoked right to counsel must be knowingly, intelligently, and voluntarily made. Here, appellant argues only that the Commonwealth failed to prove the second prong of this test.

-

We find the trial court correctly admitted appellant's confession. Appellant initiated contact with the police. The police did not approach him.

First, appellant is correct that Corporal Cooper could not approach him and initiate an interrogation, even though he did not know about the previous invocation of his right to an attorney. See Arizona v. Roberson, 486 U.S. 675, 687-89 (1988); Quinn, 25 Va. App. at 717-18, 492 S.E.2d at 478. However, Corporal Cooper did not initiate any interviews.

The evidence, viewed in the light most favorable to the Commonwealth, proved appellant's girlfriend, at his request, contacted Corporal Cooper to discuss various crimes in Hampton. Apparently, appellant wished to implicate his uncle in hopes of having some charges against him dismissed.[7] During these discussions, appellant began discussing the Norfolk robberies. Clearly, Cooper did not initiate the discussions with appellant nor did he initiate the topic of the Norfolk robberies. Appellant's statements to Cooper "show[ed] a willingness to further discuss" the Norfolk investigation. Potts, 35 Va. App. at 495, 546 S.E.2d at 234. See also Foster v. Commonwealth, 8 Va. App. 167, 174, 380 S.E.2d 12, 16 (1989) (explaining, when a defendant shows "'a willingness and a desire for a generalized

_____

[7] Based on information he provided to Corporal Cooper during one of these discussions, further evidence on one robbery was collected. As a result, one of the charges pending against appellant in Hampton was dismissed.

-

discussion about the investigation,'" he has initiated further conversations with the police (quoting Oregon v. Bradshaw, 462 U.S. 1039, 1045-46 (1983))).

Once appellant indicated his willingness to discuss the robberies, the "'police legitimately may inquire whether a suspect has changed his mind about speaking to them without an attorney.'" Foster, 8 Va. App. at 174, 380 S.E.2d at 16 (quoting Edwards, 451 U.S. at 490). Appellant initiated the discussion of the Norfolk crimes while Cooper was interviewing him. The corporal then asked if appellant was willing to talk to the Norfolk officers about these crimes, which were irrelevant to Cooper's investigation. Cooper's question was a "legitimate inquiry as to whether [appellant] had changed his mind" and now wanted to talk to the Norfolk police about those incidents. Giles, 28 Va. App. at 535, 507 S.E.2d at 107.

When Cooper entered the interrogation room on June 7th, appellant had already provided information on the Norfolk robberies. By asking if appellant was willing to talk to the Norfolk officers, Corporal Cooper simply verified appellant's interest in talking to the police.

The fact finder concluded appellant initiated the subsequent conversation with the Norfolk police. The record supports that finding. Accordingly, we affirm the decision of the trial court.

Affirmed.

-