COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Huff, Judges Decker and AtLee
Argued at Chesapeake, Virginia


EMANUEL DALE ELLIS

                                                    MEMORANDUM OPINION[*] BY
v.        Record No. 1530-14-1                      JUDGE RICHARD Y. ATLEE, JR.
                                                    JANUARY 26, 2016

COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
                            Bonnie L. Jones, Judge

              Charles E. Haden for appellant.

              John W. Blanton, Assistant Attorney General (Mark R. Herring,
              Attorney General, on brief), for appellee.


       A Hampton jury convicted Emanuel Dale Ellis of robbery and use of a firearm in the

commission of that robbery.  Ellis wished to introduce into evidence at trial a photograph from

his Facebook page with an accompanying timestamp.  The trial judge, however, granted the

Commonwealth's motion *in limine*, admitting the photograph but redacting the timestamp.  The

sole issue on appeal is the propriety of that redaction.  Assuming without deciding that the

timestamp was erroneously excluded, we find such error harmless and affirm.

                                     I.  BACKGROUND

                                      *A.  The Crime*

        In August of 2013, Miles Conley ("the victim") was walking home after completing

some freelance tattoo work.  Ellis, seventeen years old at the time, approached the victim, and

asked about the price of a tattoo.  (The victim and Ellis knew each other, though not well.)  They

_____

       [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

walked together and discussed a price. As they entered a breezeway, however, Ellis produced a revolver and robbed the victim of a book bag and suitcase, both of which contained tattooing equipment. These items were worth more than $200. Ellis also demanded the victim's Air Jordan "Concord 11" shoes. When the victim balked at giving his shoes to Ellis, Ellis pulled the hammer back on the revolver and said: "I'm not playing." The victim relinquished his shoes and ran home, where he arrived "in a state of panic, shocked and terrified," according to his foster father. The next day, based on information provided by the victim, police arrested Ellis. At the time of his arrest, Ellis was wearing Air Jordan "Concord 11" shoes, though the victim's bag and suitcase were never recovered. The grand jury indicted Ellis for two felonies: robbery and use of a firearm in the commission of that robbery.

### B. The Motion in Limine

Prior to trial, the Commonwealth moved, *in limine*, to exclude the timestamp from a Facebook[1] photograph that the Commonwealth anticipated Ellis would introduce at trial.[2] The timestamp attached to the photograph showed a date over a year prior to the robbery. In its motion *in limine*, the Commonwealth argued that the timestamp was hearsay and that its "probative value is substantially outweighed by the likelihood of misleading the trier of fact." The Commonwealth also argued that, because Facebook timestamps were unreliable and subject to modification, it would be foundationally inadequate for the person who posted the photograph to authenticate it. Ellis argued that the timestamp was not hearsay and that he could properly authenticate the timestamp. He asserted that the timestamp on the photograph would corroborate

---

[1] Facebook is a social networking Web site. "Users of that Web site may post items on their Facebook page that are accessible to other users, including Facebook 'friends' who are notified when new content is posted." Elonis v. United States, 135 S. Ct. 2001, 2004 (2015).

[2] The trial at issue in this appeal was actually Ellis's second trial on these charges. The first trial, in which Ellis introduced the photograph showing the timestamp, resulted in a deadlocked jury and a mistrial.

his testimony that he did not rob the victim, but in fact owned his own pair of Air Jordan "Concord 11" shoes, and had uploaded a photograph of himself wearing such shoes over a year before the robbery.[3]  The trial judge agreed with the Commonwealth and granted the motion *in limine*, finding that Ellis had laid inadequate foundation to authenticate the timestamp.

### C.  The Trial

At trial, the victim testified in detail about the shoes taken from him.  Although the shoes retailed for $180, due to high demand, the victim had paid a premium and purchased them for $240.[4]  Normally, the victim wore size 9 shoes, but when he purchased these shoes, all of the shoes in his size had been sold.  As a solution, the victim purchased size 8½ shoes but removed the insoles so the shoes would fit properly.  The victim also testified that one of his shoes had a minor defect.  He examined the shoes recovered from Ellis and pointed out this defect to the jury, stating "I can recognize my shoes when I see them."

---

[3] The photograph at issue shows Ellis wearing some sort of athletic-style shoes, or at least one such shoe, since only the right shoe is visible.  (We will refer to the shoes as being black and white, although the photograph is a black and white computer printout, so it is possible that the dark color could be some hue other than black.)  The visible shoe has a black strip up the left side, and a black area above the toe.  There is also a black strip near the top of the laces.  At trial, the shoes Ellis was wearing when he was arrested were offered into evidence.  At the conclusion of the trial, however, these shoes were returned to the Hampton Police Department.  See App. at 200.  (This is the second page of a document labeled "Sentencing Order."  Based on its contents and the presence of a later sentencing order, this document actually appears to be a conviction order.)  The last sentence of this document reads:  "*The Court returned Commonwealth's exhibit # 1, Sneakers, to the Officer of the Hampton Police Department.*"  Presumably, the trial court returned the exhibit pursuant to Code § 19.2-270.4(B).  That code section permits return of exhibits "to the owners thereof, notwithstanding the pendency of any appeal . . . ."  The return of exhibits under this subsection "may be upon such conditions as the court deems appropriate for future identification and inclusion in the record . . . ."  In this case, the record ideally would have contained a photograph of the shoes in place of the actual shoes.  Neither the joint appendix nor the record contains any such photograph.  As such, we are unable to compare, visually, the shoes worn by Ellis when he was arrested and the shoe in Ellis's photograph.

[4] The secondary market for basketball shoes, particularly Nike's Air Jordan brand shoes, can be lucrative, as many models increase dramatically in value following their release.  See Grant Glickson, At 'Sneakerhead' Fairs, Air Jordans Are Golden, N.Y. Times, Apr. 17, 2014, at A1.

In addition to having the same minor defect described by the victim, the shoes recovered from Ellis were size 8½, with the insoles removed. At trial, the shoes were in substantially worse condition than they were on the evening of the robbery. Ellis stressed this at trial, since police recovered the shoes from Ellis just one day after the robbery. The victim testified that the degradation in the condition and appearance of the shoes was likely a result of the shoes' storage in an evidence bag for months between seizure and trial, without having been cleaned beforehand.

Ellis's foster mother testified that Ellis left home the day before the robbery, returning home late on the night of the robbery wearing different clothes and different shoes. Ellis testified in his own behalf. He claimed the shoes he was wearing when he was arrested were his own and that he had purchased them in "March or February of 2012," more than a year before the robbery. He introduced a photograph of himself and two friends, which he claimed showed him wearing the same shoes he was wearing when he was arrested. He testified that he uploaded the photograph to his Facebook page in June of 2012. In compliance with the trial court's ruling on the Commonwealth's motion *in limine*, the date on the photograph was redacted before the photograph was introduced into evidence.

Ultimately, the jury found Ellis guilty of robbery and use of a firearm in the commission of the robbery. The trial judge sentenced Ellis to ten years in the penitentiary with six years suspended for the robbery, and three years in the penitentiary for the firearm charge.[5]

---

[5] Because Ellis was a juvenile when he committed the crime, the trial judge, rather than the jury, sentenced Ellis. See Code § 16.1-272(A).

II.  ANALYSIS

*A.  Introduction*

Along with a profusion of hashtags and cat videos, the rise of social media has brought about a reexamination, among Virginia's judges and lawyers, of the use of electronic information in criminal investigations and proceedings.  See, e.g., Stith v. Commonwealth, 65 Va. App. 27, 773 S.E.2d 165 (2015); Dalton v. Commonwealth, 64 Va. App. 512, 769 S.E.2d 698 (2015); Moter v. Commonwealth, 61 Va. App. 471, 737 S.E.2d 538 (2013); Holcomb v. Commonwealth, 58 Va. App. 339, 709 S.E.2d 711 (2011).  Academic writers have also begun to grapple with the challenges of social media evidence, in particular its authentication.  See, e.g., Michael J. Hannon, An Increasingly Important Requirement:  Authentication of Digital Evidence, 70 J. Mo. B. 314 (2014); Justin P. Murphy & Adrian Fontecilla, Social Media Evidence in Government Investigations and Criminal Proceedings:  A Frontier of New Legal Issues, 19 Rich. J.L. & Tech. 11 (2013); Ira P. Robbins, Writings on the Wall:  The Need for an Authorship-Centric Approach to the Authentication of Social-Networking Evidence, 13 Minn. J.L. Sci. & Tech. 1 (2012).

When authentication is required prior to the admission of evidence, "evidence sufficient to support a finding that the thing in question is what its proponent claims" will satisfy such requirement.  Va. R. Evid. 2:901.  Ellis compares the process and requirements for authenticating a timestamp with the procedure for authenticating a photograph.  See Bynum v. Commonwealth, 57 Va. App. 487, 492 n.3, 704 S.E.2d 131, 133 n.3 (2011).  For purposes of addressing Ellis's assignment of error, we assume, without deciding, that the trial court wrongly excluded the

timestamp.[6]  Even operating under such an assumption, we affirm his convictions, because we find that any error was harmless.

## B.  Harmless Error

We undertake a harmless error analysis because "the Constitution entitles a criminal defendant to a fair trial, not a perfect one."  Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986). Assessing error for harmlessness "promotes public respect for the criminal process by focusing on the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error."  Id.  Ellis's assignment of error has two parts, one constitutional and one non-constitutional.  Our analysis for harmless error changes depending on the nature of the error alleged.  See Lavinder v. Commonwealth, 12 Va. App. 1003, 1006 n.1, 407 S.E.2d 910, 911 n.1 (1991) (holding that the test for constitutional harmless error is different from the test for non-constitutional harmless error).  We thus analyze the two types of alleged error under two different standards.[7]

## 1.  Constitutional Harmless Error

Ellis first alleges that by requiring redaction of the timestamp, the trial court "deprive[d] Ellis of his constitutional right to call forth evidence in his favor."  The right to call forth evidence in one's favor is guaranteed by the "compulsory process" clause of the Sixth Amendment to the Constitution of the United States, which mandates that "[i]n all criminal

---

[6] See Luginbyhl v. Commonwealth, 48 Va. App. 58, 64, 628 S.E.2d 74, 77 (2006) (*en banc*) (noting that "an appellate court may structure a decision upon an 'assuming but not deciding' basis").

[7] The admission, or exclusion, of one piece of evidence can be the subject of both constitutional harmless error analysis and non-constitutional harmless error analysis.  See Fitzgerald v. Commonwealth, 61 Va. App. 279, 292 n.4, 734 S.E.2d 708, 714 n.4 (2012) ("Fitzgerald alleged both constitutional and non-constitutional errors in the admission of the [evidence].  We believe that any error in admitting the [evidence] was harmless under either standard.").

prosecutions, the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor . . . ." Similarly, Article I, Section 8 of the Constitution of Virginia reads in part that "in criminal prosecutions a man hath a right . . . to call for evidence in his favor . . . ." Because this portion of Ellis's assignment of error alleges a constitutional error, we analyze it within a constitutional harmless error framework.

"On appeal, issues of constitutional interpretation are reviewed *de novo*." Huguely v. Commonwealth, 63 Va. App. 92, 106, 754 S.E.2d 557, 564 (2014). "'[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt;' otherwise the conviction under review must be set aside." Lilly v. Commonwealth, 258 Va. 548, 551, 523 S.E.2d 208, 209 (1999) (quoting Chapman v. California, 386 U.S. 18, 24 (1967)). "A federal constitutional error is harmless, and thus excusable, only if it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" Quinn v. Commonwealth, 25 Va. App. 702, 719, 492 S.E.2d 470, 479 (1997) (quoting Chapman, 386 U.S. at 24).

In Van Arsdall, the trial court erroneously limited the defendant's cross-examination of a prosecution witness. The Supreme Court explained its harmless error review this way:

> The correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt. Whether such an error is harmless in a particular case depends upon a host of factors, all readily accessible to reviewing courts. These factors include the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and, of course, the overall strength of the prosecution's case.

Van Arsdall, 475 U.S. at 684. In conducting such an analysis of the facts and incidents of Ellis's trial, we conclude that any constitutional error was harmless.

The victim knew Ellis and identified him as the culprit. Ellis was arrested the day after the crimes wearing shoes matching those taken from the victim. The victim testified in detail about his shoes, explaining the deterioration in their condition, and pointing out the distinctive defect in the shoes Ellis was wearing. The shoes, besides being the same brand and size, had the insoles removed as well. Following the crimes, the victim arrived home "in a state of panic, shocked and terrified." Ellis's foster mother testified that he returned home late on the night of the robbery, wearing different shoes than he had been wearing the last time she saw him. As to the timestamp on the photograph, it would have been cumulative of other evidence of the date of the photograph, since Ellis himself testified to the date he uploaded the photograph. The photograph to which the timestamp was attached showed Ellis wearing a pair of shoes, as described above in footnote 2. Ellis asserts on appeal that the photograph showed him "wearing a pair of Air Jordan sneakers identical to the model of Air Jordan sneakers that were taken from the robbery victim . . . but in [Ellis]'s possession more than a year prior to the robbery." However, this Court is unable to say how similar the shoe in the photograph is to the shoes admitted into evidence, since we have neither the shoes admitted into evidence, nor a photograph of such shoes with which to conduct such a comparison.[8] The strength of the Commonwealth's case is overwhelming. For all of these reasons, we hold "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Quinn, 25 Va. App. at 719, 492 S.E.2d at 479 (quoting Chapman, 386 U.S. at 24).

---

[8] To the extent our harmless error analysis calls upon us to make such a comparison, we are unable to do so. (See supra note 2). Appellants are responsible for ensuring that this Court has an adequate record. See Rule 5A:25; Via v. Commonwealth, 42 Va. App. 164, 185 n.4, 590 S.E.2d 583, 593 n.4 (2004) (observing that "it is the appellant's responsibility on appeal to provide this Court with an appropriate appendix and record"). And we note that there is no indication in the record that Ellis objected to the return of the shoes to the Hampton Police Department.

## 2. *Non-Constitutional Harmless Error*

Ellis also alleges that the trial court erroneously excluded the timestamp, because "the Facebook posting by Emanuel Ellis could [have been] properly authenticated by Ellis and the weight to be placed upon the date of the posting was a matter for the jury to decide, not the judge." Because this portion of his assignment of error alleges a non-constitutional error, we analyze it within the non-constitutional harmless error context. "In a non-constitutional context, we review a trial court's rulings on whether to admit or exclude evidence under an abuse of discretion standard." Commonwealth v. Swann, 290 Va. 194, 197, 776 S.E.2d 265, 267 (2015).

The standard for determining whether non-constitutional error was harmless is set out in both the case law of Virginia and the Code.

> If, when all is said and done, the conviction is sure that the error did not influence the jury, or had but slight effect, the verdict and the judgment should stand . . . . But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. . . . If so, or if one is left in grave doubt, the conviction cannot stand.

Clay v. Commonwealth, 262 Va. 253, 260, 546 S.E.2d 728, 731-32 (2001) (quoting Kotteakos v. United States, 328 U.S. 750, 764-65 (1946)). Code § 8.01-678 codified the doctrine of harmless error in Virginia, and states:

> When it plainly appears from the record and the evidence given at the trial that the parties have had a fair trial on the merits and substantial justice has been reached, no judgment shall be arrested or reversed . . . [f]or any other defect, imperfection, or omission in the record, or for any error committed on [sic] the trial.

This code section "puts a *limitation on the powers* of this court to reverse the judgment of the trial court—a limitation which we must consider on every application for an appeal and on the hearing of *every case* submitted to our judgment." Kirby v. Commonwealth, 50 Va. App. 691, 699, 653 S.E.2d 600, 604 (2007) (quoting Walker v. Commonwealth, 144 Va. 648, 652, 131

- 9 -

S.E. 230, 231 (1926)).  "We will not reverse a trial court for evidentiary errors that were harmless to the ultimate result."  Shifflett v. Commonwealth, 289 Va. 10, 12, 766 S.E.2d 906, 908 (2015).  Non-constitutional harmless error analysis subjects an error to a more lenient standard of review.  See Grant v. Commonwealth, 54 Va. App. 714, 729, 682 S.E.2d 84, 91 (2009) (discussing "the lesser standard of non-constitutional harmless error").  Because we are assessing the same error under different standards, and the error passed muster when subjected to the more stringent constitutional harmless error analysis, we find that it also satisfies the requirements of non-constitutional harmless error.

### III. CONCLUSION

Assuming without deciding that the trial court erred when it excluded the timestamp from evidence, we find such exclusion constitutes harmless error.

Affirmed.