COURT OF APPEALS OF VIRGINIA

**PUBLISHED**

Present:   Judges Alston, McCullough and Senior Judge Clements
Argued by teleconference

JASON MERRITT OVERBEY

                                                        OPINION BY
v.        Record No. 1470-14-2           JUDGE ROSSIE D. ALSTON, JR.
                                                     DECEMBER 15, 2015

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF POWHATAN COUNTY
Pamela S. Baskervill, Judge Designate

Reed Amos (Amos & Amos, PLLC, on brief), for appellant.

Aaron J. Campbell, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


        Jason Merritt Overbey ("appellant") appeals the trial court's denial of his motion to

suppress statements made to law enforcement and the derivative evidence from those statements,

based on alleged violations of the Fifth, Sixth, and Fourteenth Amendments of the Constitution

of the United States and the Constitution of Virginia, Article I, Sections 8 and 11.  We find no

error in the trial court's ruling and therefore affirm appellant's convictions.

## I.  Background

        Appellant was arrested on two counts each of first-degree murder and use of a firearm in

the commission of a felony on May 22, 2011, after Kenneth Moore, Jr. and Robert Mann were

found shot and killed on the Moore family farm.  Kenneth Moore, Sr. was appellant's employer

at the time.  Appellant was indicted for these offenses on February 14, 2012.  On April 5, 2012,

appellant filed a motion to suppress certain statements he made to police based upon alleged

violations by the police of appellant's rights under the Fifth, Sixth, and Fourteenth Amendments.

On May 22, 2011, Deputy McDonald located appellant and informed him that he was not under arrest but that "he was being detained for a situation that happened in Powhatan." Appellant was then handcuffed and seated in Deputy McDonald's patrol car. Deputy McDonald testified that as he walked appellant to his vehicle, appellant said that he did not want to make any statements, however appellant then continued talking. Deputy McDonald and appellant were seated in the patrol vehicle when Detective Tackett arrived and asked to speak with appellant. At that time, appellant stated "I don't have anything to say without a lawyer." Detective Tackett testified that he then walked away and Deputy McDonald testified that as soon as Detective Tackett walked away, appellant "began to cry and stated they got me for murder, they got me for murder." No other interaction occurred between appellant and law enforcement at that time.

Appellant was eventually transported to the Powhatan Correctional Center by Corporal Smith. According to Corporal Smith's testimony, as he dropped appellant off at the center, he wished appellant "good luck." Appellant then responded, "Good luck. You know what the 'F' I did." Appellant then asked Corporal Smith why the police were obtaining a search warrant for the single-family residence where he was apprehended. Corporal Smith responded, "to look for evidence and maybe a gun." Appellant then stated "you will never find that."

On May 23, 2011, Detective Wentworth transferred appellant from the Powhatan Correctional Center to the Powhatan Sheriff's Department in order to interview him along with Lieutenant Wolfe. As he was not involved in the events of the previous evening, Detective Wentworth had apparently been informed that "there were some questions whether [appellant] actually requested a lawyer and was actually charged officially," so "[Detective Wentworth] was told to transport [appellant] and record any utterances that he might have made." To that end, Detective Wentworth transported appellant in a patrol car with a built-in recording device and also brought a back-up recording device in his pocket. An audio recording of Detective

- 2 -

Wentworth's conversation with appellant was introduced into evidence at the hearing on appellant's motion to suppress. Detective Wentworth stated that he introduced himself to appellant and asked him his name. Appellant mumbled things during the ride, and Detective Wentworth asked him to speak up as he could not understand him. Detective Wentworth asked appellant some other benign questions, and appellant "rambled on about working for [Moore]." Detective Wentworth then said that while he didn't know Moore, "he could be hard to work for from what [he had] heard." Appellant then stated several unsavory things about Moore's character and behavior.[1] At some point during the ride, appellant complained about having a headache and Detective Wentworth said that "it might benefit [appellant] to talk to somebody and tell the truth. The truth matters." Detective Wentworth also testified that at some point, appellant stated that he was "screwed" and would never get out of this. Finally, Detective Wentworth said to appellant as they exited the vehicle "I'm really concerned about the firearm, if it's in a safe manner."

Lieutenant Wolfe testified that on the morning of May 23, 2011, he contacted the Powhatan Commonwealth's Attorney's office to determine whether appellant properly requested an attorney or whether he could interrogate appellant. Lieutenant Wolfe testified that he was informed that he was legally permitted to speak to appellant. Prior to interrogating him, Lieutenant Wolfe testified that he advised appellant of his Miranda rights and presented appellant with a waiver form. This was apparently the first time that appellant was Mirandized. Lieutenant Wolfe stated that he read the form to appellant and told him that the form

> says . . . that you understand what your rights are. It's not saying that you're going to talk to me or anything like that. So I just need to see if you could sign right here saying that you understand I

---

[1] As appellant's statements to Detective Wentworth were not ultimately admitted at trial and his unsavory comments regarding one of the victims were unsubstantiated, we see no need to detail them here.

have advised you. And that that is all that that means. Do you understand that? So you or [*sic*] would you sign that saying that you understand that we are under agreement on that.

Lieutenant Wolfe did not read the part of the form that said appellant waived his rights by signing the form. Lieutenant Wolfe then removed appellant's handcuffs, and appellant apparently mumbled something about not being able to afford a lawyer anyway and signed the waiver form.

During the subsequent questioning, appellant made several statements to Lieutenant Wolfe, which were eventually admitted at appellant's trial. Lieutenant Wolfe testified that appellant stated, "I ain't getting out of this s--- anyway, man. God---- mother------." Appellant admitted to being at the Moore family farm on May 22, 2011, with both of the victims and recounted that Moore yelled at him and threatened to "kick [appellant's] . . . ass," which angered appellant. When Lieutenant Wolfe outlined his theory of the case to appellant based on his review of the scene and relevant evidence, which, in short, had appellant shooting both victims from behind, appellant told Lieutenant Wolfe, "That's what happened." Appellant also told Lieutenant Wolfe that he used a 20-gauge shotgun, which he later placed in the woods near his father's house. Lieutenant Wolfe admitted that he alluded to the unrecovered firearm during the interrogation and that he did so not just to incriminate appellant, but "for the safety of the other people that are out on the street or wherever the weapon may be . . . ." Eventually, appellant agreed to lead the authorities to the shotgun and Lieutenant Wolfe testified that the authorities would not have found the shotgun without appellant's cooperation.

Appellant did not challenge the admissibility of his statements to Deputy McDonald and Corporal Smith in his motion to suppress, nor does he challenge them on appeal. Appellant admits that those statements were spontaneous and not in response to police questioning. Appellant does, however, challenge the admission of statements he made the following day to

- 4 -

Detective Wentworth and Lieutenant Wolfe. Though the trial court denied appellant's motion to suppress statements made to both Detective Wentworth and Lieutenant Wolfe, because the statements appellant made to Detective Wentworth in the car on May 23, 2011, were not admitted at appellant's trial, we will not consider their admissibility.

Appellant argued in his motion to suppress that his Fifth Amendment rights were triggered when he was handcuffed, placed in Deputy McDonald's vehicle, and denied the right to leave at his discretion. From appellant's perspective, while Deputy McDonald told appellant that he was being detained, appellant was in fact in custody, at which time he made a clear, unequivocal request for counsel. Appellant argued that he did not subsequently reinitiate conversation with law enforcement. Notwithstanding the signed waiver form, appellant further argued that he did not knowingly or intelligently waive his rights. Finally, appellant contended that he was entitled to an attorney under the Sixth Amendment following the issuance of arrest warrants, his appearance before the magistrate, and the magistrate's ruling on bond.

At the hearing on the motion to suppress, the Commonwealth argued that appellant did not properly invoke his right to an attorney under the Fifth Amendment. The Commonwealth asserted that appellant's Fifth Amendment right to counsel had not attached at the point at which he told Detective Tackett that he wished to speak only with an attorney present as appellant was not subjected to custodial interrogation at that time. Further, the Commonwealth argued that appellant initiated the conversation with Detective Wentworth during the trip from the Powhatan Correctional Center to the Powhatan Sheriff's Office the following day. Finally, the Commonwealth argued that appellant waived both his Fifth and Sixth Amendment rights during his interrogation with Lieutenant Wolfe.[2] Alternatively, the Commonwealth argued that the trial

_____

[2] Though appellant's alleged waivers of his Fifth and Sixth Amendment rights are distinct issues, which we will address separately, the Commonwealth blended them together in argument

- 5 -

court should permit introduction of the firearm into evidence because the public safety exception to Miranda permitted the officers to question appellant about the firearm's location.

The trial court denied appellant's motion to suppress, finding that though appellant properly asserted his right to counsel when he spoke to Detective Tackett on the day of his arrest, that appellant subsequently reinitiated contact with the police.[3]  Additionally, the trial court found that appellant knowingly and willingly waived both his Fifth and Sixth Amendment rights. Finally, the trial court concluded that the questions specifically concerning the firearm met the public safety exception to Miranda.

At appellant's trial, Deputy McDonald, Detective Tackett, Corporal Smith, and Lieutenant Wolfe all testified.  At the conclusion of the trial, the jury found appellant guilty on all charges.  On August 4, 2014, the trial court sentenced appellant to life imprisonment on both charges of first-degree murder, three years' imprisonment for one count of use of a firearm in the commission of a felony, and five years' imprisonment on the second count of use of a firearm in the commission of a felony.  This appeal followed.

## II.  Analysis

Appellant contends that the trial court erred when it denied his motion to suppress the statements he made to Detective Wentworth and Lieutenant Wolfe on May 23, 2011, as well as the physical evidence (the firearm) that was discovered as a result of those statements to the authorities.  Appellant argues that these statements and the firearm should have been suppressed

before the trial court.  The Commonwealth relied upon the Miranda waiver form signed by appellant and his willingness to talk to Lieutenant Wolfe as evidence that he waived any constitutional right to counsel that may have attached at that point.

[3] In finding that appellant reinitiated contact with law enforcement, the trial court did not specify which officer (Corporal Smith or Detective Wentworth) or which conversation (the May 22, 2011 drive to the correctional center or the May 23, 2011 drive from the correctional facility to the sheriff's department) it relied upon.

because the authorities violated both his Fifth and Sixth Amendment right to counsel by subjecting him to interrogation without the benefit of counsel present.

"On appeal from a trial court's denial of a motion to suppress, the burden is on the appellant to show that the trial court's decision constituted reversible error." Quinn v. Commonwealth, 25 Va. App. 702, 712, 492 S.E.2d 470, 475 (1997). "Although we review the trial court's findings of historical fact only for 'clear error,' we review *de novo* the trial court's application of defined legal standards to the facts of the case." Giles v. Commonwealth, 28 Va. App. 527, 532, 507 S.E.2d 102, 105 (1998). "Whether a defendant 'invoked' his Miranda right to counsel during custodial interrogation and whether he 'waived' this right are determined by applying judicially declared standards." Quinn, 25 Va. App. at 713, 492 S.E.2d at 476.

A. FIFTH AMENDMENT RIGHT TO COUNSEL

"An accused has a right under the Fifth and Fourteenth Amendments to have counsel present during a custodial interrogation." Correll v. Commonwealth, 232 Va. 454, 462, 352 S.E.2d 352, 356 (1987) (citing Edwards v. Arizona, 451 U.S. 477, 482 (1981) (additional citation omitted)). This rule "provides a 'relatively rigid requirement' that police and prosecutors must observe." Hines v. Commonwealth, 19 Va. App. 218, 221, 450 S.E.2d 403, 404 (1994). It requires, when invoked, that all interrogation cease. Edwards, 451 U.S. at 484-85 ("[A]n accused, . . . having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.").

When an accused has invoked his right to counsel, "subsequent waiver of that right is not sufficient to make admissible any incriminating statements thereafter obtained, even if investigators have re-Mirandized the accused, unless the statements are initiated by the defendant

and shown to be based on a knowing, intelligent, and voluntary waiver." Giles, 28 Va. App. at 531, 507 S.E.2d at 105 (citing Edwards, 451 U.S. 484-87; Arizona v. Roberson, 486 U.S. 675, 678-82 (1988)). "Only if the accused initiates further 'communication, exchanges, or conversations with the police,' and only if those communications result in the accused changing his or her mind and freely and voluntarily waiving the right to counsel, may the police resume interrogation without violating the Edwards rule." Id. at 532, 507 S.E.2d at 105 (quoting Roberson, 486 U.S. at 682).

We evaluate the admissibility of a statement under the Edwards rule using a three-part inquiry.

> First, the trial court must determine whether the accused "unequivocally" invoked his or her right to counsel. Second, the trial court must determine whether the accused, rather than the authorities, initiated further discussions or meetings with the police. Third, if the accused did initiate further discussions or conversations with police, the trial court must then ascertain whether the accused knowingly and intelligently waived the previously invoked right to counsel.

Id.

Because the Commonwealth concedes that appellant properly invoked his right to counsel, we need not address the first element of the Edwards inquiry.[4] Instead, we first consider *de novo* whether appellant reinitiated conversation with the authorities. See Rashad v. Commonwealth, 50 Va. App. 528, 536, 651 S.E.2d 407, 411 (2007).[5]

---

[4] Although we are not obligated to accept the Commonwealth's concession of this mixed issue of law and fact, see Commonwealth v. Hilliard, 270 Va. 42, 49, 613 S.E.2d 579, 584 (2005); Copeland v. Commonwealth, 52 Va. App. 529, 531, 664 S.E.2d 528, 529 (2008), we agree, based on our review of the record, that appellant properly invoked his right to counsel.

[5] In Rashad, the Court noted that

> Since appellant [did] not contest the accuracy of the recorded dialogue [between appellant and law enforcement], [the Court's]

As the trial court concluded below, appellant asserted his right to counsel when he informed Detective Tackett that he had nothing to say without a lawyer.  Aside from his initial request to speak with appellant, Detective Tackett said nothing to appellant, and immediately departed after appellant invoked his right to counsel.  Thereafter, Corporal Smith transported appellant to the correctional facility, where upon arrival, appellant initiated conversation with the officer.  As appellant exited Corporal Smith's police vehicle, Corporal Smith told appellant, "good luck."  Appellant responded, "Good luck?  You know what the 'F' I did."  Appellant also asked Corporal Smith why the police were "doing a search warrant."  Corporal Smith responded by informing appellant that the police were looking for evidence and possibly a firearm.  Appellant told Corporal Smith that they "would never find that."

While not all statements initiate a conversation under Edwards, such as those that "relat[e] to routine incidents of the custodial relationship," an accused's statements that "evince[] a willingness and a desire for a generalized discussion about the investigation" do.  Oregon v. Bradshaw, 462 U.S. 1039, 1045-46 (1983) (5-4 decision).  Thus, the Court in Bradshaw held that the defendant reinitiated conversation with the authorities when he asked police what was going

consideration of the trial court's denial of appellant's motion to suppress [was] restricted to a *de novo* review of the legal issue of whether appellant's words, taken in context, were sufficient to indicate whether appellant initiated further dialogue with the officers.

50 Va. App. at 536, 651 S.E.2d at 411 (citing Medley v. Commonwealth, 44 Va. App. 19, 30, 602 S.E.2d 411, 416 (2004) (*en banc*)).  But see Correll, 232 Va. at 463, 352 S.E.2d at 357 ("The trial court made a finding of fact that [the appellant] initiated the discussions which led to his confession.  This finding is amply supported by the evidence, and we will not disturb it.").  Because appellant in the present case, like Rashad, does not contest the factual recitation of his statements to Corporal Smith, and in fact concedes that his statements were "spontaneous and not in response to police questioning," we apply a *de novo* standard of review to the legal question of whether the undisputed statements appellant made to Corporal Smith constituted a reinitiation under Edwards.

to happen to him next.  Id. at 1046; see also Correll, 232 Va. at 463, 352 S.E.2d at 357 (holding

that the accused's "statement that he wanted to explain the results of his polygraph test was

clearly more than a statement arising from the incidents of the custodial relationship"); Giles, 28

Va. App. at 535, 507 S.E.2d at 106 (finding that the accused initiated conversation with the

authorities when he stated "he was confused, that he did not understand, and then expressed

surprise that he was being charged with robbery").

Like Bradshaw's question to police, appellant's inquiry to Corporal Smith – questioning

why the police were "doing a search warrant" – evinced "a willingness and a desire for a

generalized discussion about the investigation." Bradshaw, 462 U.S. at 1045-46.[6]  Accordingly,

we hold that the trial court correctly determined that appellant initiated a conversation with

Corporal Smith following his earlier request for counsel.

> But even if a conversation taking place after the accused has
> expressed his desire to deal with the police only through counsel,"
> is initiated by the accused, where reinterrogation follows, the
> burden remains upon the prosecution to show that subsequent
> events indicated a waiver of the Fifth Amendment right to have
> counsel present during the interrogation.

Id. at 1044.  We therefore next consider

> whether a valid waiver of the right to counsel and the right to
> silence had occurred, that is, *whether the purported waiver was
> knowing and intelligent and found to be so under the totality of the
> circumstances*, including the necessary fact that the accused, not
> the police, reopened the dialogue with the authorities.

Id. at 1045 (quoting Edwards, 451 U.S. at 486 n.9) (emphasis added)).

---

[6] Though Bradshaw was a plurality opinion, we note that appellant's questions to
Corporal Smith would be considered "initiation" of conversation sufficient to satisfy Edwards
under not only the plurality opinion (requiring a defendant to "evince[] a willingness and a desire
for a generalized discussion about the investigation," 462 U.S. at 1045-46), but also Justice
Powell's concurrence (suggesting a broader standard more deferential to the trial court, id. at
1051 (Powell, J., concurring)), and Justice Marshall's dissent (advocating a standard where an
accused must "demonstrate a desire to discuss the subject matter of the criminal investigation" in
order to "initiate" contact under Edwards, id. at 1055 (Marshall, J., dissenting)).

"[W]hether a waiver of Miranda rights was made knowingly and intelligently is a question of fact, and the trial court's resolution of that question is entitled on appeal to a presumption of correctness." Harrison v. Commonwealth, 244 Va. 576, 581, 423 S.E.2d 160, 163 (1992).

> [The trial court] evaluates the credibility of the witnesses, resolves any conflicts in the testimony, and weighs the evidence as a whole. The court must decide whether the defendant knowingly and intelligently relinquished and abandoned his rights. The court's determination is a question of fact based upon the totality of the circumstances. This factual finding will not be disturbed on appeal unless plainly wrong.

Id. (quoting Watkins v. Commonwealth, 229 Va. 469, 477, 331 S.E.2d 422, 429-30 (1985)).

The trial court determined that "in the context of [his] conversation[s] with [Lieutenant] Wolfe [and Detective Wentworth]," appellant entered "a valid waiver, knowingly and freely made." In making this determination, the trial court relied upon, among other things, that appellant signed an express waiver-of-rights form at the beginning of his interview with Lieutenant Wolfe.

When considering whether an accused knowingly and intelligently waived his or her previously invoked right to counsel, we look to "the totality of the circumstances, including his background and experience and the conduct of the police." Giles, 28 Va. App. at 536, 507 S.E.2d at 107 (quoting Correll, 232 Va. at 464, 352 S.E.2d at 357). In this case, no evidence suggests that the officers failed to honor appellant's request for counsel. As Detective Tackett testified during the hearing on appellant's motion to suppress, he immediately ended his conversation with appellant once appellant indicated that he had nothing to say without a lawyer. Likewise, Corporal Smith honored appellant's request for counsel while transporting appellant to the Powhatan Correctional facility. As appellant conceded in his motion to suppress, the

- 11 -

statements he made to Corporal Smith were "spontaneous and not in response to police questioning."

Though we note that appellant was not Mirandized prior to his interactions with Detective Tackett and Corporal Smith, he evinced knowledge of his rights by preemptively invoking his right to counsel. After that point, the officers ceased any questioning until appellant reinitiated conversation with Corporal Smith. Appellant's counsel suggests that there is or should be some temporal limitation on when law enforcement may conduct further questioning of a suspect after he reinitiates conversation where he previously invoked his right to counsel. We find no support in the case law for such a rule and decline to impose one now. Once appellant reinitiated contact with Corporal Smith on May 22, 2011, appellant provided law enforcement with the requisite authority to communicate with appellant, so long as that communication was preceded by or simultaneous with appellant knowingly and intelligently waiving his Miranda rights. For purposes of the analysis in this particular case, it was of no consequence that appellant's waiver and the officer-initiated interrogation did not occur until the day after appellant reinitiated contact with Corporal Smith.

We agree with the trial court that appellant knowingly and intelligently waived his Miranda rights prior to the interrogation which resulted in recovery of the firearm. Lieutenant Wolfe read appellant his Miranda rights upon his arrival at the sheriff's department, and appellant signed an express waiver form prior to making any of the statements to which he objects. Appellant's express waiver is not undercut by the fact that Lieutenant Wolfe admitted that he did not read the portion of the form that indicated appellant waived his rights aloud, as he did read aloud the rest of the form. As the Commonwealth noted below, appellant "had on a

number of prior occasions dealt with the police and received <u>Miranda</u> warnings,"[7] <u>Correll</u>, 232 Va. at 464, 352 S.E.2d at 358, as appellant had been previously charged with misdemeanor marijuana offenses. The record indicates that Lieutenant Wolfe advised appellant of and that appellant understood his rights. We find that appellant was capable of effecting a valid waiver and knowingly and freely did so.

Because appellant reinitiated conversation with Corporal Smith and voluntarily waived his right to counsel, "[t]he protections provided by <u>Edwards</u> disappeared." <u>Cross v. Texas</u>, 144 S.W.3d 521, 529 (Tex. Crim. App. 2004). Accordingly, appellant's statements to Lieutenant Wolfe on May 23, 2011, were not the result of police-initiated reinterrogation conducted in violation of <u>Edwards</u>. Following appellant's reinitiation of conversation concerning the investigation and subsequent waiver, the authorities were permitted to commence further conversations with appellant - unless appellant reinvoked his right to counsel.

We therefore conclude that the trial court did not err in denying appellant's motion to suppress to the extent it alleged a violation of his Fifth Amendment right to counsel.

B. Sixth Amendment Right to Counsel

Appellant also alleges that his statements to Detective Wentworth and Lieutenant Wolfe and the evidence derived therefrom should be suppressed under the Sixth Amendment.

Unlike the right to counsel under the Fifth Amendment, which arises when invoked during custodial interrogation, the right to counsel under the Sixth Amendment arises when adversarial proceedings commence. "The Sixth Amendment right to counsel is triggered 'at or after the time that judicial proceedings have been initiated . . . whether by way of formal charge,

---

[7] This prior exposure to criminal proceedings also undermines appellant's claim that his waiver was not knowingly and intelligently given because of his low IQ of 78. <u>See</u> <u>Correll</u>, 232 Va. at 464, 352 S.E.2d at 358 (finding the defendant freely and knowingly waived his right to counsel notwithstanding his IQ of 68).

preliminary hearing, indictment, information, or arraignment.'"  Fellers v. United States, 540

U.S. 519, 523 (2004) (quoting Brewer v. Williams, 430 U.S. 387, 398 (1977)).  As the Supreme

Court has explained,

> Th[is] rule is not "mere formalism," but a recognition of the point
> at which "the government has committed itself to prosecute," "the
> adverse positions of government and defendant have solidified,"
> and the accused "finds himself faced with the prosecutorial forces
> of organized society, and immersed in the intricacies of substantive
> and procedural criminal law."

Rothergy v. Gillespie County, 554 U.S. 191, 198 (2008) (quoting Kirby v. Illinois, 406 U.S. 682,

689 (1972) (plurality opinion)).

According to appellant, the "prosecutorial process" had commenced by the time of his

interactions with Detective Wentworth and Lieutenant Wolfe, as he

> had been formally arrested for the shootings, had been officially
> served by law enforcement personnel with four felony warrants
> charging him specifically with the crimes of first-degree murder
> with the use of a firearm, had appeared before a magistrate to
> determine admission to bail, and had spent the night in the county
> jail.

Assuming that appellant's appearance before the magistrate to determine admission to jail

marked the commencement of adversarial proceedings, see Rothergy, 554 U.S. at 199 (stating

that "the right to counsel attaches at the initial appearance before a judicial officer"), we

nevertheless affirm the trial court's denial of appellant's motion to suppress.

Citing Michigan v. Jackson, 475 U.S. 625, 633, 636 (1986), appellant contends that

"[o]nce the [Sixth Amendment] right attaches, law enforcement is required to deal with a

defendant through counsel, rather than directly, even if the defendant has waived his Fifth

Amendment rights."  Not so.  The Supreme Court has explained:

> The fact that petitioner's Sixth Amendment right came into
> existence with his indictment, i.e., that he had such a right at the
> time of his questioning, does not distinguish him from the

- 14 -

> preindictment interrogatee whose right to counsel is in existence and available for his exercise while he is questioned. Had petitioner indicated he wanted the assistance of counsel, the authorities' interview with him would have stopped, and further questioning would have been forbidden (unless petitioner called for such a meeting). This was our holding in <u>Michigan v. Jackson</u>, *supra*, which applied <u>Edwards</u> to the Sixth Amendment context. We observe that the analysis in <u>Jackson</u> is rendered wholly unnecessary if petitioner's position is correct: under petitioner's theory, the officers in <u>Jackson</u> would have been completely barred from approaching the accused in that case unless he called for them. Our decision in <u>Jackson</u>, however, turned on the fact that the accused "ha[d] asked for the help of a lawyer" in dealing with the police.

<u>Patterson v. Illinois</u>, 487 U.S. 285, 290-91 (1988).

Appellant, of course, contends that he made known to the authorities his desire to have the assistance of counsel on May 22, 2011, when he informed Detective Tackett that he had nothing to say without a lawyer. But that request for counsel preceded commencement of adversarial proceedings against appellant, even under appellant's reasoning, because appellant was merely under arrest and had not yet been served "felony warrants" or taken "before [the] magistrate to determine admission to jail." <u>See</u> <u>United States v. Gouveia</u>, 467 U.S. 180, 190 (1984) ("[W]e have never held that the right to counsel attaches at the time of arrest."); <u>see also</u> <u>Tipton v. Commonwealth</u>, 18 Va. App. 832, 835, 447 S.E.2d 539, 541 (1994) ("Arrest is not a 'formal charge' that constitutes the initiation of adversarial proceedings."). In other words, in response to custodial interrogation, appellant asserted his Fifth Amendment right to counsel, which does not "create a Sixth Amendment right." <u>Id.</u> ("Although [appellant] properly asserted his Fifth Amendment right to counsel, one 'cannot create a Sixth Amendment right by asserting that he is exercising his Fifth Amendment right.'" (quoting <u>Lafon v. Commonwealth</u>, 17 Va. App. 411, 424, 438 S.E.2d 279, 287 (1993))). Because appellant at "no time [thereafter] sought to exercise his [Sixth Amendment] right to have counsel present," the Sixth Amendment

did not bar the authorities from initiating conversation with appellant outside the presence of counsel.  <u>Patterson</u>, 487 U.S. at 290.

Moreover, as the trial court concluded below, appellant waived his right to counsel under the Sixth Amendment when he "reinitiated contact with the police indicating a desire to communicate with the police, and thereafter executed a signed waiver of his rights under <u>Miranda</u> in a knowing, voluntary and intelligent manner."  As the Supreme Court has explained:

> As a general matter . . . an accused who is admonished with the warnings prescribed by this Court in <u>Miranda</u>, 384 U.S., at 479, has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one.

<u>Id.</u> at 296.

For the foregoing reasons, we find no error below, and we affirm the trial court's decision to deny appellant's motion to suppress.

<u>Affirmed.</u>