COURT OF APPEALS OF VIRGINIA

Present: Judges Ortiz, Raphael and White
Argued at Virginia Beach, Virginia

BRIAN FAYNE, S/K/A
 BRIAN LATRELL FAYNE

                                                          OPINION BY
v.          Record No. 1675-23-1           JUDGE STUART A. RAPHAEL
                                                          MARCH 4, 2025

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF HAMPTON
Bonnie L. Jones, Judge

James O. Broccoletti (S. Mario Lorello; Zoby & Broccoletti, P.C.,
on brief), for appellant.

Tanner M. Russo, Assistant Attorney General (Jason S. Miyares,
Attorney General; Jessica M. Bradley, Assistant Attorney General,
on brief), for appellee.


Brian Latrell Fayne appeals the trial court's denial of his motion to suppress. He argues

that the court erred in finding that he initiated further conversations with detectives who

continued to interrogate him in spite of his request for counsel under *Miranda v. Arizona*, 384

U.S. 436 (1966). Fayne also argues that the detectives' misconduct tainted the confession that

resulted because he did not voluntarily, knowingly, and intelligently waive his *Miranda* right to

counsel. Because we agree that Fayne's inculpatory statements were tainted by the improper

interrogation, we reverse the trial court's ruling and remand for further proceedings.

BACKGROUND

We recite the facts in the light most favorable to the Commonwealth, the prevailing party

below. *Camann v. Commonwealth*, 79 Va. App. 427, 431 (2024) (en banc). "Doing so requires

that we 'discard' the defendant's evidence when it conflicts with the Commonwealth's evidence,

'regard as true all the credible evidence favorable to the Commonwealth,' and read 'all fair inferences' in the Commonwealth's favor." *Id.* (quoting *Commonwealth v. Cady*, 300 Va. 325, 329 (2021)).

Late in the evening of December 18, 2020, Fayne and C.K. agreed to meet at a Sunoco gas station in Hampton.[1] Fayne and C.K. had previously been in a romantic relationship. C.K. arrived with two others in a white Dodge pickup truck. Fayne was driving a Toyota sport utility vehicle. C.K. got into Fayne's SUV, where she stayed for about two minutes. As she got out and started walking back to the pickup truck, Fayne and C.K. were "arguing loudly." After C.K. got back in the truck, Fayne allegedly fired eight rounds at the vehicle. A bullet struck C.K. in the torso, killing her and the unborn child she was expecting with Fayne. The gunfire shattered a backseat window, cutting another passenger's face. That passenger also suffered a gunshot wound to his left hand.

*A. The interrogation*

A few days later, Fayne was detained and interrogated by detectives at the Hampton Police Department. Fayne waited alone in an interrogation room for about an hour and 20 minutes before detectives Daniel Smith and Henry Hodson came to speak with him. Detective Smith read Fayne his *Miranda* rights from a pre-printed card. Fayne confirmed that he understood his rights. Throughout the interrogation, the detectives provided Fayne with water and snacks, and they permitted him to smoke cigarettes. The detectives also allowed Fayne to call his daughter, fiancée, and father.

For more than four hours, Fayne denied responsibility for C.K.'s murder. Fayne asked the detectives if he could call his father a second time. They agreed on the condition that Fayne

---

[1] We omit the victim's identity to protect the family's privacy.

put the call on speaker. Fayne's father advised him not to say anything more until Fayne could consult a lawyer.

After that call, Fayne asked if he and an attorney could discuss the allegations with the detectives and a Commonwealth's attorney, all present at the same time. Detective Smith said that was not likely to happen.

Forty minutes later, Fayne unequivocally requested an attorney:

> I feel like this is a waste of your time, my time or my money towards a lawyer. And that's why I strongly request him here. I hate to do this in front, but before I give a statement I'm going to give, even before talking to him, I just want him.

Detective Smith did not stop the interrogation.

Smith acknowledged that it was Fayne's right to request an attorney, but Smith warned that once counsel was involved it would be difficult for Fayne to make a statement. Smith said that "it [would] be good for [Fayne's] mental health" to make a statement, but if Fayne hired an attorney, this could be "the last time" he and Fayne could have "a face-to-face like this."

When Fayne said that he had seen detectives talk to people in jail, Smith pressed him further:

> You've said it a couple times. "I want to make a statement but I don't want to say the wrong thing . . . ." I'm thinking the statement you want to make is about the why. Is that fair to say? Your side. What happened. Why did this happen. That's what you want to tell me, but you don't want to make a mistake. And I get that and I respect that.

Fayne responded, "I don't want to really say nothing."

Then Detective Hodson urged Fayne to talk:

> Well you've already said that . . . you feel like you can better elaborate things than me, so say it straight to me, man. Then, as you're saying it, I'll interpret it and if I'm confused about something, I'll ask. Just like I said, start at the beginning, we're asking for two minutes. When [C.K.] got into that car, what was said between the two of you?

- 3 -

After a few minutes of silence, Detective Smith left the room and Detective Hodson asked Fayne if he wanted to say anything to C.K.'s family. Fayne replied, "let them know that everything is figured out."

Detective Smith returned a few minutes later and told Fayne that new evidence made it even more important for Fayne to tell them what happened:

> I want to show you a few more things. This just came in . . . hot off the presses. . . . I don't want you to feel like the walls are closing in, but I want you to see how important it is that we get your side of the story. Because your Instagram search warrants just came back in. Does that pants and jacket and shirt look familiar? And does that silver Toyota SUV look familiar? If I show all of this to a courtroom, with no explanation, it not only looks bad, but it straight up looks nuclear bad. You see what I'm saying? That's why we need to know the why. Because we already know the when, and the who, and the where. And I can do a whole lot more with my Commonwealth['s Attorney] with an honest, apologetic person, than I can with somebody who clams up and doesn't want to face the facts.

Detective Smith allowed Fayne to make another call to his father. Again, Fayne's father told him to stay quiet until he could speak with a lawyer. Smith said that he and Fayne had more things to talk about, and Smith told Fayne to hang up.

Moving on from "the why," Smith asked Fayne about the gun used to shoot C.K. When Fayne did not respond directly, Smith moved on to other potential crimes, asking him whether white powder found in C.K.'s house contained narcotics belonging to Fayne.

By that point, about 30 minutes had passed since Fayne had requested counsel. A third detective, Steven Carpenter, now entered the interrogation room, replacing Detective Hodson. Carpenter had been intermittently watching Fayne's interrogation from the hallway. Smith left about ten minutes after Carpenter arrived.

Carpenter interrogated Fayne for another 40 minutes. Fayne maintained, "I want to give a statement, but I don't want to f*** up my statement." Fayne admitted to Carpenter that he had

sold cocaine to C.K. in the past, but Fayne did not reveal any more details about the shooting. Voicing frustration, Carpenter said he could not do anything else for Fayne and left the interrogation room.

Less than a minute later, Fayne opened the interrogation-room door and asked for Detective Smith.[2] When Detective Smith returned, he spent another 35 minutes steadily coaxing a confession from Fayne. Fayne said he felt "set up" when he met C.K. at the Sunoco, since the gas station itself was closed but multiple cars were in the parking lot. Fayne eventually provided details to Smith about the gun he used and approximately how many shots he had fired at the car.

On October 4, 2021, a grand jury indicted Fayne for C.K.'s murder, aggravated malicious wounding, and other gun-related charges.

### B. Fayne's motion to suppress

Fayne's attorney moved to suppress all statements that Fayne made to the detectives after he invoked his right to counsel. The Commonwealth's Attorney for the City of Hampton filed a "Disclosure" advising that the police department in a previous case had "determined that Detective Smith, in spite of training and experience, failed to recognize a suspect's invocation of Constitutional Rights. As a result, Detective Smith did not honor the suspect's invocation." In addition, the disclosure suggested that Detective Smith had been untruthful in that case: "when later asked by the Hampton Commonwealth's Attorney if the suspect invoked his rights, Detective Smith answered in the negative."

At the suppression hearing that followed, the Commonwealth conceded that Fayne had sufficiently invoked his right to counsel. Despite the Commonwealth's concession, Detective

---

[2] Detective Carpenter initially told Fayne that Detective Smith was no longer at the station to talk. A fourth detective joined in the interrogation. The detectives then repeatedly asked Fayne if he "meant to kill" C.K. Detective Smith returned about 15 minutes after Fayne asked to speak with him.

Smith maintained that Fayne had not "definitively" said that he wanted an attorney. When asked why he continued the interrogation after Fayne requested counsel, Smith claimed that Fayne's request was equivocal and that Fayne "continued to talk to [him] just as [they] had been." Smith said that, after leaving the interrogation room, he did not "do anything to go back and initiate contact" with Fayne.

Smith agreed on cross-examination that he had "continued to speak to [Fayne]" after Fayne asked for a lawyer. In light of the prosecution's disclosure, Smith conceded that he had previously "failed to recognize a suspect's invocation of his constitutional rights." Still, Smith maintained that he did not ask Fayne to waive his right to a lawyer because he did not think that Fayne "had asked for a lawyer" in the first place. Smith acknowledged that Detective Carpenter continued to interrogate Fayne for about an "hour and 20 minutes" after Fayne invoked his right to counsel.

Detective Carpenter testified that, despite having watched portions of Fayne's interrogation by detectives Smith and Hodson, he did not know that Fayne had asked for counsel. He said if he had known about Fayne's invocation, he never would have entered the interrogation room. Carpenter said that his interrogation of Fayne ended when he told Fayne he couldn't do anything else for him and left the room.

Carpenter admitted on cross-examination that he had not asked the other detectives whether Fayne had been Mirandized or invoked his *Miranda* rights. Carpenter agreed that he did not re-Mirandize Fayne or ask if he wanted to waive his right to counsel when Fayne opened the door to ask for Detective Smith.

The trial court denied the motion to suppress, finding that Fayne "reinitiated further contact with police after the invocation." The court reasoned that after Carpenter left the room,

Fayne took it upon himself to open the door and ask for Detective Smith to return. The court found that Fayne knowingly and intelligently waived his previously invoked right to counsel.

Fayne entered a conditional guilty plea that preserved his right to appeal the denial of his suppression motion. The trial court accepted Fayne's plea, finding him guilty of: (1) second-degree murder, (2) shooting into an occupied vehicle, (3) shooting in public, (4) use of a firearm (two counts), (5) aggravated malicious wounding, and (6) possession of a firearm as a convicted felon. Fayne was sentenced to 88 years in prison with 53 years suspended. Fayne noted a timely appeal.

ANALYSIS

The party appealing the denial of a motion to suppress bears the burden "to show that the trial court's decision constituted reversible error." *Quinn v. Commonwealth*, 25 Va. App. 702, 712 (1997). We review "the trial court's findings of historical fact only for clear error." *Ferguson v. Commonwealth*, 52 Va. App. 324, 334 (2008) (en banc), *aff'd*, 278 Va. 118 (2009). But "we review *de novo* the trial court's application of defined legal standards to the particular facts of a case." *Id.*

The Fifth Amendment to the United States Constitution provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." The Due Process Clause of the Fourteenth Amendment also protects the privilege against self-incrimination from "abridgment by the States." *Malloy v. Hogan*, 378 U.S. 1, 6 (1964).

In *Miranda v. Arizona*, 384 U.S. 436 (1966), the Supreme Court held "that when an individual is taken into custody . . . and is subjected to questioning, the privilege against self-incrimination is jeopardized." *Id.* at 478. To protect the privilege, *Miranda* announced several prophylactic warnings that must be provided "to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored." *Id.* at 479.

> [The suspect] must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires . . . . After such warnings have been given, . . . the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.

*Id.*

This case centers on the *Miranda* warning that the accused has the right to the presence of an attorney, a right that *Miranda* said was "indispensable to the protection of the Fifth Amendment privilege." *Id.* at 469. *Miranda* derived that requirement in part from *Escobedo v. Illinois*, 378 U.S. 478 (1964), where the police during a custodial interrogation had refused the suspect's request for a lawyer. *See Miranda*, 384 U.S. at 465-66. "The denial of the defendant's request for his attorney . . . undermined his ability to exercise the privilege—to remain silent if he chose or to speak without any intimidation, blatant or subtle." *Id.* at 466. *Miranda* reasoned that "[t]he presence of counsel . . . would be the adequate protective device necessary to make the process of police interrogation conform to the dictates of the privilege. His presence would insure that statements made in the government-established atmosphere are not the product of compulsion." *Id.*

*Miranda* made clear that "[i]f the individual states that he wants an attorney, the interrogation must cease until an attorney is present." *Id.* at 474. "If the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Id.* at 475.

- 8 -

In *Edwards v. Arizona*, 451 U.S. 477 (1981), the Court concluded that the "traditional standard for waiver was not sufficient to protect a suspect's right to have counsel present at a subsequent interrogation if he had previously requested counsel; 'additional safeguards' were necessary." *Maryland v. Shatzer*, 559 U.S. 98, 104 (2010) (quoting *Edwards*, 451 U.S. at 484). *Edwards* thus "superimposed a 'second layer of prophylaxis'" if a suspect in a custodial interrogation invokes his right to counsel. *Id.* (quoting *McNeil v. Wisconsin*, 501 U.S. 171, 176 (1991)). *Edwards* held that:

> [W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. . . . [He] is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.

451 U.S. at 484-85.

The requirements for a valid waiver differ for waiving one's *Miranda* rights generally compared to waiving the specific *Miranda* right to have counsel present once that right has been invoked. "Under this rule, a voluntary *Miranda* waiver is sufficient at the time of an initial attempted interrogation to protect a suspect's right to have counsel present, but it is not sufficient at the time of subsequent attempts if the suspect initially requested the presence of counsel." *Shatzer*, 559 U.S. at 105.

> The rationale of *Edwards* is that once a suspect indicates that "he is not capable of undergoing [custodial] questioning without advice of counsel," "any subsequent waiver that has come at the authorities' behest, and not at the suspect's own instigation, is itself the product of the 'inherently compelling pressures' and not the purely voluntary choice of the suspect."

*Id.* (alteration in original) (quoting *Arizona v. Roberson*, 486 U.S. 675, 681 (1988)). In other words, *Edwards* established a "presumption of involuntariness" of a waiver of the right to

- 9 -

counsel that "ensures that police will not take advantage of the mounting coercive pressures of 'prolonged police custody,' by repeatedly attempting to question a suspect who previously requested counsel until the suspect is 'badgered into submission.'" *Id.* (first quoting *Roberson*, 486 U.S. at 686; and then quoting *Roberson*, *id.* at 690 (Kennedy, J., dissenting).

This Court has repeatedly applied *Edwards* to invalidate confessions obtained during custodial interrogations by police officers who failed to stop questioning suspects who invoked their right to counsel. *Ferguson*, 52 Va. App. at 324; *Quinn*, 25 Va. App. at 702; *Hines v. Commonwealth*, 19 Va. App. 218 (1994).

When the accused in custody requested counsel in *Hines*, the detective responded by saying, "All I wanted to know is whether you're going to be a witness or a defendant in the matter." 19 Va. App. at 220. When Hines asked what he meant, the detective continued the discussion and Hines ultimately made incriminating statements. *Id.* We held that the trial court erred in finding that Hines had "initiated the further discussion." *Id.* "By asking Hines 'whether [he was] going to be a witness or a defendant in the matter,' the officer continued the conversation that he was bound to cease." *Id.* at 221 (alteration in original). In other words, the inquiry by the detective was the "reinitiation of the dialogue that Hines sought to terminate." *Id.* "When the officer continued the dialogue without first giving Hines access to his lawyer, the statements that he elicited did not follow upon a valid waiver of Hines's Fifth Amendment rights." *Id.* at 222.

In *Quinn*, we said that "[w]hether the *Edwards* rule renders a statement inadmissible is determined by a three-part inquiry." 25 Va. App. at 712.

- "First, the trial court 'must determine whether the accused actually invoked his right to counsel' and whether the defendant remained in continuous custody from the time he or she invoked this right to the time of the statement." *Id.* (quoting *Smith v. Illinois*, 469 U.S. 91, 95 (1984)).

- 10 -

- "Second, if the accused has invoked his . . . right to counsel and has remained in continuous custody, the statement is inadmissible unless the trial court finds that the statement was made at a meeting with the police that was initiated by the defendant or attended by his lawyer." *Id.*

- "Third, if the first two parts of the inquiry are met, the trial court may admit the statement if it determines that the defendant thereafter [voluntarily,] 'knowingly and intelligently waived the right he had invoked.'" *Id.* (quoting *Smith*, 469 U.S. at 95).[3]

Applying that three-part inquiry in *Quinn*, we held that the trial court erred by failing to suppress two separate incriminating statements elicited from a defendant in custody who had clearly invoked his *Miranda* right to counsel. *Id.* at 713-18. In one instance, several days after Quinn had requested his lawyer to be present for any interview, the investigator read Quinn his *Miranda* rights again. The investigator told Quinn (incorrectly) that his prior request for counsel applied only to the crime for which Quinn had been charged; if Quinn wanted to request counsel in connection with a different criminal investigation, he would have to "'re-invoke' his *Miranda* right to counsel." *Id.* at 707-08. *But see Roberson*, 486 U.S. at 682 (declining to create exception to *Edwards* for custodial interrogation about a different crime). When Quinn did not ask for a lawyer, the investigator spoke with him at length, eliciting incriminating statements about the uncharged offense. *Quinn*, 25 Va. App. at 708. We held that no break in custody had occurred, that the investigator had initiated the conversation, and that Quinn's failure to invoke his right to counsel after hearing his *Miranda* rights again was insufficient to show that he waived his right to counsel. *Id.* at 714.

We also held that the trial court should have suppressed a second statement elicited from Quinn by a different officer who was unaware that Quinn had previously invoked his right to

---

[3] *Quinn* made clear that voluntariness must also be shown in the third part of the three-part inquiry. *See Quinn*, 25 Va. App. at 710 ("If the interrogation continues without the presence of an attorney, the defendant's statement is inadmissible unless the Commonwealth proves by a preponderance of the evidence that the defendant voluntarily, knowingly, and intelligently waived his right to retained or appointed counsel." (citing *Edwards*, 451 U.S. at 482)).

counsel. *Id.* at 716-19. We recognized the Supreme Court's holding in *Roberson* that "an officer who initiates the reinterrogation of a defendant without knowing of the defendant's prior request for counsel is not relieved of complying with the *Edwards* rule." *Id.* at 716. We said that *Roberson* imposed on "law enforcement authorities . . . a duty to inform each other of prior invocations of the *Miranda* right to counsel by suspects in their custody and that the *Edwards* rule requires officers to ascertain prior to interrogation whether a suspect has previously requested counsel." *Id.*

We applied the three-part inquiry again in our en banc decision in *Ferguson*, 52 Va. App. at 335-36, a case with important parallels to this one. After the police arrested Ferguson on suspicion of burglary and read him his *Miranda* rights, Ferguson asked for a lawyer. *Id.* at 331. Instead of stopping the interrogation, the investigator said, "Okay, well, you don't have to talk to me. Let me talk to you now." *Id.* The investigator proceeded for several minutes to detail the evidence against Ferguson and to urge him "to come clean." *Id.* When Ferguson did not cooperate, the investigator announced that the interview was over and that Ferguson would remain in the interrogation room "for a few minutes" with the police chief, a friend of Ferguson's family. *Id.* at 332. After 20 minutes of silence, Ferguson blurted out, "either 'I messed up' or 'This is messed up.'" *Id.* He and the police chief then began to talk about Ferguson's family, and the police chief encouraged Ferguson to help himself by cooperating. *Id.* at 332-33. The investigator returned and, after being read his *Miranda* rights again, Ferguson gave a recorded statement admitting his involvement. *Id.* at 333. The confession occurred 45 minutes after Ferguson was first brought into the interrogation room. *Id.*

We said that the police violated *Edwards* by failing to stop their questioning after Ferguson had unequivocally requested counsel. *Id.* at 338-44. In particular, we held that it was not Ferguson who reinitiated the conversation with police, but the police who reinitiated their

- 12 -

interrogation of Ferguson after violating their obligation to stop questioning him once he invoked his right to counsel. "Any consideration of whether a defendant 're-initiated' the dialogue with police necessarily presumes that police officers have stopped the interrogation upon a defendant's request for counsel. Indeed, the analysis under *Edwards* presupposes that police will cease all interrogation after a suspect invokes his right to counsel." *Id.* at 340. We held that "[w]hen police do not cease interrogation, *their* statements constitute an 'initiation' of further discussions with a suspect, and any incriminating statements gained during that discussion are deemed inadmissible." *Id.* (emphasis added). Finding the facts "markedly similar to those in *Hines*," *id.* at 338, we said that, "as in *Hines*, despite appellant's invocation of his right to counsel, the interview never ceased. [The i]nvestigator . . . and [Police] Chief continued questioning appellant as if his request for counsel had never been made." *Id.* at 340. Thus, the question was not whether Ferguson's statement that broke the silence "'reinitiated' a dialogue with police; [the] [i]nvestigator . . . and [Police] Chief[']s continued interrogation of appellant after he invoked his right to counsel initiated the dialogue." *Id.* at 347.

The Supreme Court affirmed our decision in *Ferguson*. 278 Va. at 126. The Court said that the officers' "failure to honor Ferguson's request for counsel had its intended effect." *Id.* at 125. The Court held that the "encounter was one continuous custodial interrogation conducted in such a manner as to deliberately disregard a clear, unambiguous and unequivocal invocation of the right to counsel and coerce Ferguson to incriminate himself." *Id.* at 126.

*Ferguson* controls the outcome here. Like the officers there, the officers here disregarded Fayne's clear invocation of his *Miranda* right to counsel. Where Ferguson's interrogation took only 45 minutes to result in a confession after the police disregarded his request for a lawyer, the officers here interrogated Fayne for more than an hour after he invoked his right to counsel. And when Fayne said he "strongly" requested an attorney, Detective Smith immediately tried to

dissuade him. Smith warned that Fayne would lose his "direct line" to Smith once an attorney got involved. Smith urged that Fayne's mental health would benefit from making a statement; he warned ominously that he had no idea what would happen once he left the interrogation room. Detective Hodson chimed in, assuring Fayne that the detectives would help him tell his side of the story. Detective Smith then produced incriminating photographs from Fayne's social media account, telling him that the evidence would look "nuclear bad" without an explanation from Fayne about what happened. When that did not work, Detective Carpenter tried his luck to elicit a confession. And although Carpenter said he would not have interrogated Fayne had he known of his request for counsel, *Roberson* and *Quinn* make clear that Carpenter is deemed to have been on notice that Fayne had invoked his *Miranda* right to counsel.

As in *Ferguson*, the trial court here erred in concluding that it was the accused who reinitiated discussions with the police. To be sure, less than a minute after Detective Carpenter left the interrogation room, Fayne asked to speak with Detective Smith, whom Fayne felt had been kinder to him than Carpenter. But just as Ferguson's outburst to the police chief after 20 minutes of silence was not a reinitiation by the accused, nor was Fayne's asking to speak with Smith less than a minute after Carpenter left the room. Any such reinitiation "presupposes" that the police first stopped their interrogation, as *Edwards* and *Miranda* required them to do. *Ferguson*, 52 Va. App. at 340. Here, as in *Ferguson*, the police continued their interrogation in disregard of an explicit request for counsel. To repeat, "[w]hen police do not cease interrogation, their statements constitute an 'initiation' of further discussions with a suspect, and any incriminating statements gained during that discussion are deemed inadmissible." *Id.*

Even assuming for argument's sake that Fayne reinitiated the discussion, suppression was also required under the third consideration in the three-step inquiry—whether the accused made a voluntary, knowing, and intelligent waiver of his previously invoked right to counsel. "When

- 14 -

considering whether an accused knowingly and intelligently waived his or her previously invoked right to counsel, we look to 'the totality of the circumstances, including his background and experience and the conduct of the police.'" *Overbey v. Commonwealth*, 65 Va. App. 636, 650 (2015) (quoting *Giles v. Commonwealth*, 28 Va. App. 527, 536 (1998)).

Even though Ferguson ultimately confessed after being reread his *Miranda* rights, we said that his confession "did not follow upon a valid waiver of [his] Fifth Amendment rights." *Ferguson*, 52 Va. App. at 348 (quoting *Hines*, 19 Va. App. at 222). Here, as in *Ferguson*, the prior invocation of the right to counsel "raise[s] the presumption that [the accused] is unable to proceed without a lawyer's advice." *Roberson*, 486 U.S. at 683. Indeed, "to a suspect who has indicated his inability to cope with the pressures of custodial interrogation by requesting counsel, any further interrogation without counsel having been provided will surely exacerbate whatever compulsion to speak the suspect may be feeling." *Id.* at 686. If the presumption that the defendant needed counsel to voluntarily, knowingly, and intelligently exercise his rights was not overcome in *Ferguson*, where the accused was reread his *Miranda* rights, it was certainly not overcome here when no such renewed warnings were given.

The need for the *Edwards* presumption is clear: "It is easy to believe that a suspect may be coerced or badgered into abandoning his earlier refusal to be questioned without counsel in the paradigm *Edwards* case." *Shatzer*, 559 U.S. at 106. When the police continue to question an accused in spite of his request for a lawyer, the accused is denied the chance to "regain[] a sense of control or normalcy after . . . [being] initially taken into custody for the crime under investigation." *Id.* at 107.

The short break in time when Fayne was alone before asking to speak with Smith was not a break in custody, let alone a break in custody long enough "for the suspect to get reacclimated to his normal life, to consult with friends and counsel, and to shake off any residual coercive

effects of his prior custody." *Id.* at 110. As in *Ferguson*, therefore, there was no valid waiver here of Fayne's *Miranda* right to counsel.

We are not persuaded by the Commonwealth's claim that *Correll v. Commonwealth*, 232 Va. 454 (1987), supports affirming the trial court's ruling. True, the police there had interrogated Correll for two days after he invoked his *Miranda* right to counsel, failing to provide him a lawyer. *Id.* at 460. The Commonwealth did not seek to introduce into evidence his statements from those two days. *Id.* On the third day, after Correll was taken for a polygraph examination, Correll told an officer who was unaware of Correll's request for counsel that he wanted to speak with him. *Id.* Correll then confessed after being read his *Miranda* rights. *Id.* at 460-61. The Court affirmed the trial court's finding that Correll had initiated the conversation on the third day. *Id.* at 463.

But we distinguished *Correll* in *Ferguson*, noting that Correll had "never alleged that his request for counsel on the first day of interrogation was linked to any subsequent violations of his Fifth Amendment rights." *Ferguson*, 52 Va. App. at 346. Correll argued only "that his conversation with the . . . officer on the third day was 'an extension of the interrogation that began that morning . . . [with] a polygraph test.'" *Id.* (alterations in original). *Correll* is further distinguishable because the Commonwealth there relied on the argument that the officer was "unaware" that Correll had previously invoked his *Miranda* right to counsel. 232 Va. at 460. But the United States Supreme Court in *Roberson* held in 1988, the year after *Correll* was decided, that an *Edwards* violation cannot be excused by an officer's failure to discover that the accused had previously invoked his right to counsel. *See Roberson*, 486 U.S. at 687-88. In short, *Correll* does not support the Commonwealth's position here.

We do not foreclose the possibility that the presumption of involuntariness of the waiver of the right to counsel could be overcome by facts sufficient to show a voluntary, knowing, and

intelligent waiver. But our cases in which the presumption of involuntariness of the waiver was overcome generally involved police officers who abided by *Miranda* and *Edwards* by immediately stopping their questioning when the accused asked for a lawyer. *See, e.g.*, *Overbey*, 65 Va. App. at 647-48; *Rashad v. Commonwealth*, 50 Va. App. 528, 536 (2007); *Potts v. Commonwealth*, 35 Va. App. 485, 494, *aff'd en banc*, 37 Va. App. 64 (2001); *Giles*, 28 Va. App. at 533. When, as here, the police have violated their obligation to stop the interrogation, the Commonwealth properly bears "a heavy burden," *Miranda*, 384 U.S. at 680, to show a voluntary, knowing, and intelligent waiver of the *Miranda* right to counsel.

CONCLUSION

The detectives' violation of Fayne's rights under *Edwards* and *Miranda* "tainted any subsequent confession made by appellant while he remained in the[ir] continuous custody." *Ferguson*, 52 Va. App. at 348. The trial court therefore erred in denying Fayne's suppression motion. Because Fayne has prevailed in this appeal, he is entitled to withdraw his conditional guilty plea. *See* Code § 19.2-254. Fayne "must be given the opportunity to reassess the admissible evidence that may be used against him and, if the Commonwealth wishes to continue its prosecution, demand a trial if he so desires." *Hasan v. Commonwealth*, 276 Va. 674, 681 (2008).

*Reversed and remanded.*